No. 23-20570

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

MEGALOMEDIA INCORPORATED; MEGALOMEDIA STUDIOS, L.L.C.; MANSFIELD
FILMS, L.L.C.; DBA HOLDINGS, L.L.C.,
*Plaintiffs - Appellants,*

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,
*Defendant - Appellee.*

---

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
No. 4:20-CV-01644

---

BRIEF OF APPELLEE

---

Stephen A. Melendi
Texas Bar No. 24041468
stephenm@tbmmlaw.com
Matthew Rigney
Texas Bar No. 24068636
mattr@tbmmlaw.com
Grant Martin
Texas Bar No. 24102145
GrantM@tbmmlaw.com
Tollefson Bradley Mitchell & Melendi, LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone: (214) 665-0100
Telecopier: (214) 665-0199

Charles T. Frazier, Jr.
Texas Bar No. 07403100
cfrazier@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
8144 Walnut Hill Lane, Suite 1000
Dallas, Texas 75231-4388
Telephone: (214) 369-2358
Telecopier: (214) 369-2359

ATTORNEYS FOR DEFENDANT-APPELLEE

The undersigned counsel of record certifies that the following list of persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

| | |
|---|---|
| **Plaintiff-Appellant:** | Megalomedia Incorporated, Megalomedia Studios, L.L.C., Mansfield Films, L.L.C., and DBA Holdings, L.L.C. |
| **Trial & Appellate Counsel:** | J Santosh Shankaran Aravind<br>Texas Bar No. 24095052<br>saravind@scottdoug.com<br>Anthony Frank Arguijo<br>Texas Bar No. 24079781<br>aarguijo@scottdoug.com<br>Stephen E. McConnico<br>Texas Bar No. 13450300<br>smcconnico@scottdoug.com<br>Jane Webre<br>Texas Bar No. 21050060<br>SCOTT, DOUGLAS & MCCONNICO, L.L.P.<br>303 Colorado Street, Suite 2400<br>Austin, Texas 78701 |
| **Defendant-Appellee:** | Philadelphia Indemnity Insurance Company |
| **Appellate Counsel:** | Stephen A. Melendi<br>Texas Bar No. 24041468<br>stephenm@tbmmlaw.com<br>Matthew Rigney<br>Texas Bar No. 24068636<br>mattr@tbmmlaw.com<br>Grant Martin<br>Texas Bar No. 24102145<br>grantm@tbmmlaw.com |

Tollefson Bradley Mitchell & Melendi LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone: (214) 665-0100
Telecopier: (214) 665-0199

Charles T. Frazier, Jr.
Texas Bar No. 07403100
cfrazier@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
8144 Walnut Hill Lane, Suite 1000
Dallas, Texas 75231-4388
Telephone: (214) 369-2358
Facsimile: (214) 369-2359

**Trial Counsel:**          Stephen A. Melendi
Texas Bar No. 24041468
stephenm@tbmmlaw.com
Matthew Rigney
Texas Bar No. 24068636
mattr@tbmmlaw.com
grant martin
Texas Bar No. 24102145
grantm@tbmmlaw.com
Tollefson Bradley Mitchell & Melendi LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone: (214) 665-0100
Telecopier: (214) 665-0199

*s/ Stephen A. Melendi*
Stephen A. Melendi
Attorney of Record for
Defendant-Appellee Philadelphia Indemnity
Insurance Company

## STATEMENT REGARDING ORAL ARGUMENT

Philadelphia Indemnity Insurance Company does not believe this case merits oral argument. Appellants' appeal of the pre-trial summary judgment involves a pure question of law regarding the construction and interpretation of an insurance policy and whether certain policy language is ambiguous. The law in Texas and this Circuit is well-developed on this issue. The appeal of the final judgment following a trial to the court similarly presents no new issues of law or complex issues of fact. Should the Court set this appeal for oral argument, Philadelphia will look forward to presenting argument to the Court.

Certificate of Interested Persons ............................................................... i

Statement Regarding Oral Argument .................................................... iii

Table of Contents ................................................................................ iv

Table of Authorities ........................................................................... vii

Jurisdictional Statement ........................................................................1

Issues .....................................................................................................2

Statement of the Case............................................................................3

    I.    Factual background relevant to the appeal of the summary judgment ........4

        A.    Philadelphia issues commercial package insurance policies to Megalomedia. ........................................................................5

        B.    Several participants in the reality TV show *My 600-lb Life* sue Megalomedia for personal-injury damages..........................6

        C.    Philadelphia files a declaratory-judgment suit on the duty to defend and indemnify Megalomedia and obtains a summary judgment on both duties. ........................................................7

    II.    Factual and procedural background relevant to the appeal of the judgment following the bench trial. ................................................................8

        A.    Background ........................................................................8

        B.    Philadelphia refuses to write separate policies for two shows..............9

        C.    Each year, Megalomedia renewed the policy after accepting Philadelphia's proposal for insurance that included the reality TV exclusion..........................................................................11

        D.    Megalomedia maintained separate liability coverage for its reality shows from other insurers. ................................................12

E.    Megalomedia voluntarily provided Philadelphia with proof of coverage for its reality shows, including *My 600-lb Life* and other weight-loss shows...............................................................13

F.    Megalomedia did not include the production cost for *My 600-lb Life* when Philadelphia asked for gross production costs for all shows, except for reality TV shows. ...............................................14

G.    The district court dismissed Megalomedia's counterclaims after a bench trial .............................................................15

Summary of the Argument................................................................16

I.    Summary judgment was proper ...............................................16

II.    The post-trial judgment should be affirmed................................17

Argument & Authorities ...............................................................20

I.    The District Court Properly Granted Summary Judgment That Philadelphia Owes No Duty To Defend Or Indemnify Megalomedia Against The Claims In The Underlying Suit. ...............................................20

A.    Whether an insurer has a duty to defend is determined under the "eight corners" rule. ..............................................20

B.    The petition in the underlying suit alleges "bodily injury" arising from "any/all reality shows." ..............................................21

C.    The phrase "any/all reality shows" is not ambiguous and has one reasonable meaning. ..............................................23

D.    Megalomedia's interpretation of the reality TV exclusion is unreasonable because it ignores the phrase "any/all." ....................25

E.    Megalomedia ignores the eight corners rule. ....................................28

F.    Megalomedia failed to preserve its ambiguity argument and improperly relies on evidence adduced during the bench trial in challenging the summary judgment. ..............................................29

1.    Megalomedia failed to preserve its argument that "reality TV" is an ambiguous term.......................................................31

2. Megalomedia improperly relies on evidence outside the summary-judgment record.................................................34

G. Megalomedia's position is belied by the record. ................36

H. The same facts that negate the duty to defend preclude any possibility of a duty to indemnify. ........................................................42

I. Conclusion: The Court should affirm the summary judgment. ..........44

II. The Court Should Affirm The District Court's Findings And Conclusions. 45

A. The district court correctly found that Megalomedia knew the reality TV exclusion applied to *My 600-lb Life*. ............................................46

1. Megalomedia is charged with knowledge of the reality TV exclusion and its one reasonable meaning as a matter of law.....47

2. The trial record removes any doubt that Megalomedia was aware of the reality TV exclusion or its applicability to *My 600-lb Life*. ...............................................................................49

3. Philadelphia made no material omission....................................51

B. Stalnaker's email was not a misrepresentation of specific policy terms actionable under Texas law. ................................................52

1. The Court recently held in Finger Oil & Gas v. Mid-Continent Casualty that a statement about a policy's coverage, in light of a specific claim, was not actionable. ............................................53

2. Stalnaker's email is less specific than the representation in *Finger Oil* and occurred nine years before the underlying *My 600-lb Life* litigation....................................................................................55

C. Conclusion: The Court should affirm the final judgment..................58

Prayer ..........................................................................................................59

Certificate of Compliance .........................................................................61

Certificate of Service ................................................................................62

# TABLE OF AUTHORITIES

## Cases

*Avila v. State Farm Fire & Cas. Co.*, 147 F. Supp. 2d 570 (W.D. Tex. 1999) .......52

*Burton v. State Farm Mut. Auto. Ins. Co.*,
   869 F. Supp. 480 (S.D. Tex. 1994),
   *aff'd*, 66 F.3d 319 (5th Cir. 1995) ..................................................52

*City of Coll. Station, Tex. v. Star Ins. Co.*, 735 F.3d 332 (5th Cir. 2013) ..............20

*Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248 (5th Cir. 2011) ..............42

*D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co., Ltd.*,
   300 S.W.3d 740 (Tex. 2009)......................................................... 42, 44

*Drees v. Phila. Am. Life Ins. Co.*, No. 4:20-CV-03607,
   2023 WL 25381 (S.D. Tex. Jan. 3, 2023),
   *rpt. & rec. adopted*, 2023 WL 319957 (S.D. Tex. Jan. 19, 2023) .......................57

*Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997) ....... 42, 44

*Finger Oil & Gas, Inc., v. Mid-Continent Cas. Co.*, No. 22-50432,
   2023 WL 581650 (5th Cir. Jan. 27, 2023) (per curiam) ........................ 53, 54, 56

*Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132 (Tex. 1994)...................................37

*Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*,
   327 S.W.3d 118 (Tex. 2010)................................................... 28, 29, 54

*Gold Coast Commodities, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
   96 F.4th 769 (5th Cir. 2024) ...............................................................25

*Grogan v. Kumar*, 873 F.3d 273(5th Cir. 2017) ......................................... 2, 30, 34

*Hess Corp. v. Schlumberger Tech. Corp.*,
   26 F.4th 229, 232-33 (5th Cir. 2022) ...................................... 2, 46, 51

*Hudspeth v. Enter. Life Ins. Co.*,
   358 S.W.3d 373 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ......................52

*Hunton v. Guardian Life Ins. Co. of Am.*,
   243 F. Supp. 2d 686 (S.D. Tex. 2002),
   *aff'd*, 71 Fed. Appx. 441 (5th Cir. 2003)..............................................48

*In re Deepwater Horizon*, 470 S.W.3d 452 (Tex. 2015) ...........................25

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).........................30

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
   546 S.W.3d 648 (Tex. 2018)................................................................48

*Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*,
   646 F.3d 321 (5th Cir. 2011)..............................................................46

*Kinsale Ins. Co. v. Flyin' Diesel Performance & Offroad, L.L.C.*,
   99 F.4th 821 (5th Cir. 2024) ................................................. 24, 26, 28

*Lexon Ins. Co., Inc. v. Fed. Deposit Ins. Corp.*, 7 F.4th 315 (5th Cir. 2021)..........26

*Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*,
   75 F.4th 522 (5th Cir. 2023) ..............................................................44

*LNG Ams, Inc. v. Chevron Nat. Gas*, No. CV H-21-2226,
   2023 WL 2920940 (S.D. Tex. Apr. 12, 2023) ....................................27

*Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*,
   640 S.W.3d 195 (Tex. 2022)........................................... 20, 21, 28, 35

*Morris Cnty. Nat. Bank v. John Deere Ins. Co.*,
   254 F.3d 538 (5th Cir. 2001).................................................... 48, 57

*Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234 (Tex. 2023)....................24

*Nabors Well Servs., Ltd. v. Romero*, 456 S.W.3d 553 (Tex. 2015)........................26

*Nationwide Mut. Ins. Co. v. Choi*, No. 23-20405,
   2024 WL 2131515 (5th Cir. May 13, 2024) ......................................44

*Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*,
   566 F.3d 452 (5th Cir. 2009).................................................... 41, 42

*Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300 (5th Cir. 1988)............................35

*Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642 (5th Cir. 2008).............41

*Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*,
　279 S.W.3d 650 (Tex. 2009).................................................................35

*Piranha Partners v. Neuhoff*, 596 S.W.3d 740 (Tex. 2020)....................................24

*Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546 (5th Cir. 2004) ........20

*Proton PRC, Ltd. v. ET & AS Invs., Inc.*, No. 02-21-00258-CV,
　2022 WL 488939  (Tex. App.—Fort Worth Feb. 17, 2022, no pet.) .................41

*Red Ball Motor Freight, Inc. v. Emp'rs Mut. Liab. Ins. Co.*,
　189 F.2d 374 (5th Cir. 1951)...............................................................43

*Ruiz v. Gov't Emps. Ins. Co.*,
　4 S.W.3d 838 (Tex. App.—El Paso 1999, no pet.)...........................................52

*SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018) ..........................................26

*Schuerger v. Farmers New World Life Ins. Co.*, No. SA-18-CV-584-XR,
　2019 WL 13150018  (W.D. Tex. Oct. 31, 2019)..................................................57

*Scottsdale Ins. Co. v. Mt. Hawley Ins. Co.*, No. M-10-58,
　2011 WL 9169946 (S.D. Tex. Jun. 15, 2011).........................................43

*Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation*,
　173 F.3d 941 (5th Cir. 1999)...............................................................43

*Sentry Equities, Ltd. v. Allstate Life Ins. Co.*, No. 22-20024,
　2022 WL 16549210 (5th Cir. Oct. 31, 2022)................................... 33, 34

*Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909 (5th Cir. 1992)................................30

*State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931 (Tex. 1998) ................25

*Tetra Techs., Inc. v. Cont'l Ins. Co.*, 814 F.3d 733 (5th Cir. 2016) (per curiam) ...26

*U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*,
　681 S.W.3d 383 (Tex. 2023) (per curiam)...........................................24

*URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755 (Tex. 2018) ......................................24

*USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018) .......................56

**Statutes**

28 U.S.C. § 1332 ............................................................................1

Tex. Bus. & Com. Code § 1.303(a) ...............................................41

Tex. Bus. & Comm. Code § 17.46 .................................................46

Tex. Ins Code § 541.051 ...............................................................46

Tex. Ins Code § 541.060 ...............................................................46

Tex. Ins Code § 541.061 ...............................................................46

**Rules**

Fed. R. Civ. P. 56 ......................................................................2, 30

## JURISDICTIONAL STATEMENT

Philadelphia agrees with Megalomedia's statement of jurisdiction. The district court had diversity jurisdiction over this matter because Philadelphia is completely diverse from all the Megalomedia adverse parties, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; *see* ROA.4531 ¶58 (finding Megalomedia's claimed damages well exceed $75,000).

Megalomedia does not accurately state the issues in this appeal. Therefore, Philadelphia presents the following issues to the Court:

1.      Did the district court properly rule—based on the summary-judgment record and the eight-corners rule—that the allegations in the underlying suit fall within the scope of the reality TV exclusion—*i.e.*, "bodily injury" arising out of "any/all reality shows"?

The Court reviews summary-judgment rulings *de novo*, using the summary-judgment record that was before the district court. *Grogan v. Kumar*, 873 F.3d 273, 277 (5th Cir. 2017) (citing FED. R. CIV. P. 56(a)).

2.      Did Megalomedia fail to satisfy all elements of its fraud and statutory claims during the bench trial, despite, as the district court found, that it knew about the unambiguous reality TV exclusion and that *My 600-lb Life* is a reality show?

The Court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*. *Hess Corp. v. Schlumberger Tech. Corp.*, 26 F.4th 229, 232-33 (5th Cir. 2022).

This appeal involves two separate district court orders that occurred two years apart and concern a series of ten consecutive commercial-package insurance policies Philadelphia issued to Megalomedia from December 2010 to December 2020. The first order is a June 1, 2021 summary-judgment order by U.S. District Judge Vanessa Gilmore, which held that Philadelphia has no duty to defend or indemnify Megalomedia against a consolidated personal injury suit pending in Harris County, Texas. ROA.1752-65 (RE5); *see also* ROA.4601 (RE3 at 1) (The final judgment cites the summary judgment in stating that "Philadelphia has no duty to defend or indemnify" Megalomedia against the claims in the underlying suit.).

The second order is a final judgment entered October 20, 2023 by U.S. District Judge Alfred Bennett, after a bench trial earlier that year.[1] ROA.4546-47 (RE3). After the summary judgment, Megalomedia amended its complaint to assert causes of action for fraudulent inducement and violations of the DTPA and Texas Insurance Code, alleging that Philadelphia induced Megalomedia into purchasing insurance policies that did not provide coverage for the claims against Megalomedia in the Harris County suit. In its findings of fact and conclusions of law, the district court found that Megalomedia failed to establish the essential elements of its causes of

---

[1] Judge Gilmore retired in January 2022, and the case was reassigned to Judge Bennett. ROA.1933

action against Philadelphia. ROA.4519; *see* ROA.4535 ¶72 (RE4 at 17); ROA.4537 ¶¶82-83 (RE4 at 19).[2]

Megalomedia has appealed both the summary-judgment order and the final judgment. The Court should affirm.

Because the issues in this case involve two orders, under two standards of review, that require reference to two portions of the record, Philadelphia presents the facts of the case in two sections.

## I.    Factual background relevant to the appeal of the summary judgment

Megalomedia is a television production company that produces the reality show *My 600-lb Life*, which chronicles the lives of morbidly obese participants as they work toward attaining a healthy weight. ROA. 1753. In 2020, several former participants of *My 600-lb Life* sued Megalomedia in Harris County, Texas, alleging that they suffered injuries caused by their participation in the show. ROA.1753. These suits were consolidated into a single suit in May 2020. *Id.* The claims of all participants have been dismissed with prejudice except one—the claim by the estate of L.B. Bonner.

---

[2] Appellants' Record Excerpts are cited as "(RE[Tab No.] at [page number of the document, where possible])." Philadelphia's Record Excerpts are bates-numbered RE001 to RE040 (in blue) and are cited as "(RE[bates page number])."

**A.  Philadelphia issues commercial package insurance policies to Megalomedia.**

Philadelphia issued ten consecutive commercial-package policies to Megalomedia covering the period from December 2010 to December 2020. ROA.1753. The policies provide Megalomedia with various coverages, including commercial property, commercial general liability, inland marine, and, for many years, commercial auto. *E.g.*, ROA.331. One portion of the commercial general liability coverage provides coverage for "property damage" and "bodily injury" that is caused by an "occurrence" that occurs during the policy period. ROA.433. Each policy contains an exclusion titled "Exclusion – Designated Ongoing Operations," referred to as the "reality TV exclusion" or by its form number, CG2153. This exclusion provides:

> The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):
>
> This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

ROA.460. (RE6). The referenced "Schedule" reads:

**Description of Designated Ongoing Operation(s):**
Excludes the production of, filming or distribution of pornographic materials.
Excludes any/all reality shows. Excludes rental/loan of insureds equipment or
equipment leased by the insured to 3rd party

*Id.*

### B. Several participants in the reality TV show *My 600-lb Life* sue Megalomedia for personal-injury damages.

The operative pleading at issue in the underlying suit is Bonner's Second

Amended Petition. ROA.232 (RE001). The petition opens with the following factual

allegations:

> Reality shows now dominate television viewer ratings. . . "*My 600-lb Life*" is a[n] example of a show that costs relatively little to produce but is ultimately sold for a large profit to a major network (which is actively involved in development) and which generates substantial profits for the network.

ROA.232. (RE001-2). The petition alleges that Megalomedia "produces reality

shows" and that "[o]ne of the Megalomedia Defendants' reality television shows is

called "'*My 600-lb Life*.'" ROA.235. (RE004).

The petition further asserts that Bonner began filming the reality show in the

spring of 2017, and his episode aired in February 2018. ROA.239-40 (RE008-09).

Bonner's estate claims that Megalomedia should have known the risks associated

with Bonner's participation in this type of reality show, but that Megalomedia

"provided absolutely no mental health assistance to [Bonner], before, during or after

filming." ROA.240 (RE009). Bonner allegedly began to experience mental-health

issues caused by the lifestyle changes required of him to appear on the show. *Id.* The estate contends that the mental distress Bonner was experiencing resulted in physical manifestations, including loss of teeth, impaired vision, and "general malaise." ROA.241 (RE010). The estate alleges that Bonner's mental health continued to decline until he killed himself on August 2, 2018. ROA.240-42 (RE009-11).

### C. Philadelphia files a declaratory-judgment suit on the duty to defend and indemnify Megalomedia and obtains a summary judgment on both duties.

Megalomedia notified Philadelphia of the participants' suits, and Philadelphia disclaimed coverage because the claims are excluded by the reality TV exclusion. Philadelphia then filed this lawsuit seeking a declaration that it does not have a duty to defend or indemnify Megalomedia against the underlying claims. ROA.18-20. Megalomedia answered and asserted counterclaims for breach of contract, breach of the common law duty of good faith and fair dealing, and various Texas Insurance Code violations, all of which arise out of Philadelphia's coverage decision. ROA.141-49. Philadelphia filed a motion for summary judgment on November 20, 2020, asserting that, under the eight-corners rule, it has no duty to defend Megalomedia and that the same facts that negated Philadelphia's duty to defend— namely, that all the underlying "bodily injuries" arose out of "any/all reality shows"—precluded any possibility that Philadelphia would have a duty to

indemnify. *E.g.*, ROA.199, 203-04. The district court granted the motion on both duties and entered a final judgment. ROA.1765-66.

After entry of the final judgment, Megalomedia moved to set it aside, asserting that the summary judgment order did not dispose of its original counterclaims, which related to Philadelphia's coverage decision. *See* ROA.1771. The district court granted the motion. *Id.* The district court then permitted Megalomedia to amend its pleading to assert a new set of counterclaims based upon a new theory of the case — that Philadelphia defrauded Megalomedia into purchasing the policies that did not cover the underlying claims. ROA.1794, 1806-17. These amended counterclaims were tried to the district court in February 2023.

## II. Factual and procedural background relevant to the appeal of the judgment following the bench trial.

### A. Background

Megalomedia is a production company that develops and produces reality television series, including the reality show *My 600-lb Life*. ROA.4847 at 6:8-9 ROA.4919 at 78:4-7. *My 600-lb Life* chronicles the lives of extremely obese people who work to lose weight. ROA.4855 at 14:18-21. Megalomedia first entered into an insurance policy with Philadelphia in 2010 and elected to renew the policy as offered on a yearly basis from 2011 until 2019. ROA.4525 ¶26 (citing ROA.4730 at 83:2-11, ROA.4731 at 84:12-19, ROA.4733 at 86:17-25, ROA.4741 at 94:18-22, ROA.4747 at 100:17-21, ROA.4750 at 103:22-104:9; ROA.4915 at 74:4-10). The

initial policy and all renewals were handled through Megalomedia's insurance broker/expert, Jason McKinley, and those in his office; Philadelphia never had direct contact with Megalomedia. ROA.4524 ¶22 (RE4 at 6) (citing ROA.4952-53 at 111:20-112:2, 138:20-22).

The Philadelphia policies provided Megalomedia with coverage for a variety of risks over several coverages: general liability, commercial property, inland marine, and commercial auto. ROA.4521 ¶8 (RE4 at 3) (citing ROA.7295; ROA.5172-73 at 21:24-22:4). For example, under general liability coverage B, Megalomedia was insured against certain claims that pose significant risks to production companies. ROA.4522 ¶11 (RE4 at 4); *see* ROA.9036, 9044 (providing coverage for "personal and advertising injury").

## B.    Philadelphia refuses to write separate policies for two shows.

In 2011, while the first policy was in effect, Megalomedia's broker approached Philadelphia, seeking a *separate policy* for an upcoming show called "Cartel City," which followed the day-to-day life of the LaJoya, Texas police department. ROA.4522 ¶13 (RE4 at 4); ROA.4527 ¶36 (RE4 at 9). Philadelphia refused to write the separate policy altogether. ROA.4527 ¶36.

After Megalomedia asked for the separate *Cartel City* policy, Philadelphia added the reality TV exclusion to the existing policy, effective June 3, 2011. ROA.4522 ¶15 (RE4 at 4). The reality TV exclusion applies to only one part of one

of the coverages provided by the general liability coverage form (Coverage A). It has no effect on the inland marine, commercial property, commercial auto, or any other coverages provided by the package policies. Nor does it influence the liability coverage provided by the Film Production Additional Coverages Form. ROA.4523 ¶19 (RE4 at 5) (citing ROA.4726 at 79:3-21; ROA.4727-28 at 80:2-81:7; ROA.7466). In explaining why Philadelphia did not write a separate policy for *Cartel City*, Stalnaker represented to Megalomedia's broker that Philadelphia was "okay with the other work that [Megalomedia was] doing, just not this particular project [*Cartel City*]," meaning that Philadelphia was "okay with what we had already written the policy for." ROA.4523 ¶¶20-21 (RE4 at 5-6) (citing ROA.6144; ROA.4799-4800 at 152:17-153:23); *see also* ROA 4813, at 166:5-14. Megalomedia's broker, Jason McKinley, does not believe that Stalnaker intended to mislead Megalomedia. ROA.4525 ¶28 (RE4 at 7).

Likewise in 2013, Megalomedia sought a *separate policy* for the show *Fugitive Recovery*, which followed U.S. Marshals hunting fugitives. ROA.4526 ¶32 (RE4 at 8) (citing ROA.6318). Philadelphia refused to write a separate policy for *Fugitive Recovery* due to the element of danger associated with the show. *Id.* (citing ROA.6343-44). As with *Cartel City* two years earlier, Philadelphia's refusal to write a separate policy for *Fugitive Recovery* had no bearing on the existing Philadelphia policy. ROA.4527 ¶36.

**C. Each year, Megalomedia renewed the policy after accepting Philadelphia's proposal for insurance that included the reality TV exclusion.**

Each year when the policy renewed, Philadelphia required Megalomedia to fill out an application that requested basic information. ROA.4730, at 83:19-23; ROA.4525 ¶¶26, 30 (RE4 at 7). Despite Megalomedia's repeated representations otherwise, Philadelphia never "approved" any application. Rather, each year, Philadelphia reviewed Megalomedia's application and sent back to Megalomedia a proposal of insurance that Megalomedia could accept, reject, or negotiate. ROA.4525 ¶30 (Re4 at 7) (citing ROA.4723 at 76:15-23, ROA.4721-22 at 74:17-75:3). Megalomedia's own insurance broker and expert, Jason McKinley, confirmed this process. ROA.4723, at 76:3-23; ROA.4758, at 111:18-19; ROA.4762, at 115:13-21; ROA.4764-65, at 117:23-118:10.

These insurance proposals specifically advised Megalomedia that "[a]ny other coverage extensions, deletions, or changes requested in the submission are hereby rejected." ROA.4525 ¶27 (RE4 at 7) (citing ROA.6170; ROA.4732 at 85:15-24). "McKinley understood that the information on the application did not determine the Policy's coverage; rather, the terms of the policy determine the coverage." ROA.4525 ¶27 (RE4 at 7) (citing ROA.4712-13 at 65:5-66:10). The proposals also advised Megalomedia that:

No coverage is afforded or implied unless shown in this proposal.

This proposal does not constitute a binder of insurance.

This proposal is strictly limited to the terms and conditions herein.  Any other coverage extensions, deletions or changes requested in the submission are hereby rejected.

| | |
|---|---|
| Signature of Authorized Insurance Representative | 12/5/13 |
| | Date |

ROA.4525 ¶29 (RE4 at 7) (citing ROA.6393; ROA.4732 at 85:15-24). For example, the signature of Jonathan Nowzaradan, Megalomedia's founder and owner, appears directly beneath this paragraph on the 2013 proposal. *Id.* The 2011 proposal—the first renewal after the reality TV exclusion was added—advises Megalomedia that "it is not the policies [sic] intent to cover Film and production of TV Series [or] Film and production of Reality Shows." ROA.6188. Despite these explicit advisories, Megalomedia never actually read the policies that were issued. ROA.4526 ¶34 (citing ROA.5020 at 179:1-180:4; ROA.4908 at 67:10-11).

### D. Megalomedia maintained separate liability coverage for its reality shows from other insurers.

In addition to the insurance that Megalomedia purchased from Philadelphia, Megalomedia also carried production insurance mandated by the TV networks that aired Megalomedia's shows. ROA.4527 ¶37 (RE4 at 9) (citing ROA.4887 at 46:12-17). These network-mandated insurance policies included general-liability insurance for claims of "bodily injury." ROA.4527 ¶38 (citing ROA.6627-41).

Unlike the Philadelphia policies, the network-mandated policies *were* written on a production-specific basis. ROA.4527 ¶39 (RE4 at 9) (citing ROA.4944 at 103:22-104:4). Megalomedia represented to the insurers that provided its network-mandated policies that *My 600-lb Life* is a reality show. ROA.4527 ¶40 (RE4 at 9) (citing ROA.10068).

### E. Megalomedia voluntarily provided Philadelphia with proof of coverage for its reality shows, including *My 600-lb Life* and other weight-loss shows.

In November 2015, leading up to the renewal of the 2015-16 policy, Philadelphia reminded Megalomedia's agent that "[t]he Reality TV portion of this account is excluded on the CG2153." ROA.4527-28 ¶41 (RE4 at 9-10) (citing ROA.6477; ROA.4738 at 91:12-23). Nevertheless, Megalomedia still chose to renew the policy. *Id.* (citing ROA.4739-40 at 92:19-93:1). Likewise, for the 2015 renewal, Philadelphia required Megalomedia to provide certificates of insurance for its reality shows to prove that Megalomedia carried liability insurance for these shows elsewhere. ROA.4528 ¶42 (RE4 at 10) (citing ROA.6440, 6449-52; ROA.4734-37 at 87:24-90:6; ROA.6437-38). Megalomedia provided these certificates of insurance, including certificates for *My 600-lb Life*. *Id.* This occurred again in 2016, when Philadelphia reminded Megalomedia that the policy excludes coverage for bodily injury arising from any/all reality shows. ROA.4528 ¶45 (RE4 at 10) (citing ROA.6583). Philadelphia again required Megalomedia to provide

proof of insurance for liability coverage for its reality shows as a requirement to bind the policy. *Id.* (citing ROA.6583; ROA.4747-48 at 100:17-101:1). Megalomedia sent Philadelphia proof of general liability coverage for *My 600-lb Life*. ROA.4529 ¶46 (RE4 at 11) (citing ROA.6630-31; ROA.4742 at 95:20-96:6, 101:2-25). The same thing happened in 2017, when Megalomedia's agent sent Philadelphia general liability certificates from other insurers for *My 600-lb Life* and other weight-loss reality shows. ROA.4529 ¶49 (RE4 at 11) (citing ROA.6754, 6752, 6756-60; ROA.4749 at 102:1-15; ROA.4936-37 at 95:10-96:1).

**F.     Megalomedia did not include the production cost for *My 600-lb Life* when Philadelphia asked for gross production costs for all shows, except for reality TV shows.**

Philadelphia calculated the premium for the general-liability coverage based on the gross-production costs for all its shows. ROA.4522 ¶12 (RE4 at 4) (citing ROA.5168 at 17:2-12). Before the 2015 renewal, Philadelphia reminded Megalomedia that "since we are not covering any of the reality TV, we need the gross production cost minus the reality TV figures." ROA.4528 ¶43 (RE4 at 10) (citing ROA.6496; ROA.4927 at 86:2-7). Originally, Megalomedia reported that its gross production costs were just over $16 million. ROA.4528 ¶44 (RE4 at 10) (citing ROA.6486; ROA.4767 at 120:6-23). However, when Philadelphia clarified that it needed total production costs, *less Megalomedia's reality TV shows*, Megalomedia revised the number down to $3 million, which did not include any costs associated

14

with *My 600-lb Life*. *Id.* (citing ROA.6495-96; ROA.4927 at 86:2-10; ROA.4928 at 87:22-24). Importantly, Philadelphia's request was for gross production costs **less the costs for *reality* TV productions**, not for gross-production costs less the costs for *My 600-lb Life*. *Id.* (citing ROA.6495-96). Thus, the decision to respond with *My 600-lb Life*'s costs excluded was solely Megalomedia's.

The same thing occurred in 2016, when Philadelphia asked for, and Megalomedia provided, gross production costs for its productions excluding the costs for reality TV. ROA.4529 ¶47 (RE4 at 11) (citing ROA.6589; ROA.4744 at 97:4-8). The cost figures provided to Philadelphia did not include the costs for *My 600-lb Life*. *Id.* (citing ROA.4934-35 at 93:24-94:4).

## G. The district court dismissed Megalomedia's counterclaims after a bench trial

The Parties tried Megalomedia's amended counterclaims to the district court over three days in February 2023. At the trial's conclusion, the district court requested that the Parties submit briefing on specific issues. ROA.5277 at 126:15-24. The Parties submitted their post-trial briefs and proposed findings of fact and conclusions of law. The court then issued its findings of fact and conclusions of law and a final judgment that Megalomedia take nothing and that Megalomedia's amended counterclaims be dismissed on the merits. ROA.4519-38, 4546-47. Megalomedia appealed to this Court.

The Court should affirm both the district court's 2021 summary judgment order and its final judgment entered after the 2023 bench trial.

## I. Summary judgment was proper

Under Texas' eight-corners rule, Philadelphia has no duty to defend Megalomedia against the claims asserted in the underlying lawsuit. The Philadelphia policy excludes coverage for claims of "bodily injury" arising out of "any/all reality shows." The underlying pleadings specifically allege that Bonner and the other *My 600-lb Life* participants were injured as a direct result of their filming and appearing on the show. The pleadings consistently and repeatedly refer to *My 600-lb Life* as a "reality show"—the exact same phrase used in the exclusion. The reality TV exclusion is unambiguous because it has only one reasonable interpretation applied to these facts. Therefore, Philadelphia has no duty to defend.

To avoid the straightforward application of the eight-corners rule, Megalomedia attempts to create an ambiguity where none exists. Its interpretation of the reality TV exclusion is that "any/all reality shows" somehow means "some, but not all, reality shows" and that *My 600-lb Life* falls into the "not all" category. This is contrary to the exclusion's plain language and creates a distinction in how the exclusion applies when there is no such distinction in the policy. Megalomedia's interpretation of the exclusion is so strained that it requires Megalomedia to

16

completely reverse the argument it made to the district court. Megalomedia never asserted in the district court that the term "reality show" is ambiguous. Rather, it admitted to the district court in its briefing that *My 600-lb Life* is a reality show. Finally, even if the Court takes Megalomedia's argument at face value—ignoring omission of the eight-corners rule, that it never raised the ambiguity argument to the district court, and its citations to evidence outside the summary judgment record— the summary judgement should still be affirmed because the record demonstrates that the parties intended and understood that *My 600-lb Life* is a reality show subject to the exclusion.

## II.     The post-trial judgment should be affirmed

The Court should also affirm the district court's 2023 final judgment. Megalomedia rightly admits that this part of the appeal should go forward only if this Court affirms the summary judgment. This means that to reach Megalomedia's challenge to the judgment, findings, and conclusions following the bench trial, this Court must have already held that the reality TV exclusion is unambiguous and that it precludes coverage for the *My 600-lb Life* claims.

Megalomedia raises two specific issues with district court's findings of fact and conclusions of law. The first is the factual finding that Megalomedia knew or should have known that *My 600-lb Life* was subject to the reality TV exclusion. This Court, under the clear error standard, should affirm because Texas law charges an

insured with knowledge of its policy, and the record overwhelmingly supports this finding, which negates the reliance element of each of Megalomedia's causes of action.

Texas law charges Megalomedia with knowledge of the contents of its policy. The result is that, as a matter of law, Megalomedia knows the policy contains the unambiguous reality TV exclusion. And, because the exclusion is unambiguous— *i.e.*, has only one reasonable meaning—Megalomedia must also therefore be charged with the knowledge that the policy excludes claims like those in the underlying lawsuit.

Further, the trial record demonstrates that in 2015, 2016, and 2017, before Bonner was on the show, Megalomedia considered *My 600-lb Life* to be a reality show. In these years, Philadelphia asked Megalomedia for (1) proof of liability coverage elsewhere for its reality shows; and (2) the gross production costs of its non-reality TV productions. Each year, Megalomedia provided certificates of insurance for *My 600-lb Life* and gross production costs that did not include *My 600-lb Life*.

Megalomedia's second issue concerns application of Texas law as most recently set out in this Court's opinion in in *Finger Oil & Gas, Incorporated, v. Mid-Continent Casualty Co.*, No. 22-50432, 2023 WL 581650, at *3 (5th Cir. Jan. 27, 2023) (per curiam). The sole factual basis for this point is the 2011 email from Don

Stalnaker in which he explains why Philadelphia would not write a separate policy for *Cartel City* and that Philadelphia was "okay with" the Philadelphia policy that already existed. Under Texas law, however, a generalized statement about policy coverage — as opposed to a specific misrepresentation about policy terms — is not actionable under the Insurance Code and DTPA. Stalnaker's email does not concern any specific policy term and occurred nine years before the underlying litigation began and years before *My 600-lb Life* even existed. It is more general and attenuated to the insurance claim at issue than the statement in *Finger Oil*. For these reasons, the Court should affirm.

**ARGUMENT & AUTHORITIES**

## I. The District Court Properly Granted Summary Judgment That Philadelphia Owes No Duty To Defend Or Indemnify Megalomedia Against The Claims In The Underlying Suit.

Megalomedia's first issue challenges the summary judgment in which the district court ruled that Philadelphia owes Megalomedia no duty to defend or indemnify it against the claims alleged in the underlying suit. Br. 2-3, 16.

### A. Whether an insurer has a duty to defend is determined under the "eight corners" rule.

A court determines an insurer's duty to defend by applying the "eight corners" rule. *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199 (Tex. 2022). Under this rule, the court compares the allegations in the complaint against the insured with the provisions of the applicable insurance policy. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004). The rule "confines the court's consideration to the underlying pleadings 'without regard to the truth or falsity' of their allegations and to the relevant insurance policy." *Monroe*, 640 S.W.3d at 199. If all injuries alleged against the insured fall within the scope of a policy exclusion, the insurer has no duty to defend. *City of Coll. Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 337 (5th Cir. 2013).

Here, the district court correctly acknowledged and properly applied the eight-corners rule in holding that Philadelphia has no duty to defend Megalomedia against the claims asserted by the Bonner estate. ROA.1759-62. When this Court reviews

the district court's summary judgment order, the only relevant documents are the operative Philadelphia policy and the petition filed in the underlying suit. *Monroe*, 640 S.W.3d at 199. As discussed below, to avoid application of the unambiguous policy language, Megalomedia has chosen to ignore this rule by failing to discuss the eight-corners rule.

**B.    The petition in the underlying suit alleges "bodily injury" arising from "any/all reality shows."**

Four of the eight corners involved in determining the duty to defend comprise the insurance policy at issue. In this case, the Philadelphia policy issued to Megalomedia provides coverage for "bodily injury" that occurs during the applicable policy period and is caused by an "occurrence." ROA.433.[3] The policy also contains the reality TV exclusion, which modifies the policies' coverage A of the commercial general liability coverage part. ROA. 460. (RE6). The endorsement adds the following exclusion:

> This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

*Id*. The schedule referred to in the above provision reads:

---

[3] The district court applied the eight-corners rule using the policy in effect from December 2017 to December 2018 because Bonner died in August 2018. ROA.1754 (citing ROA.433-44.) Philadelphia agrees that this is the policy that should be used.

Description of Designated Ongoing Operation(s):

Excludes the production of, filming or distribution of pornographic materials. Excludes any/all reality shows. Excludes rental/loan of insureds equipment or equipment leased by the insured to 3rd party.

*Id.* Under the plain language of this exclusion, there is no coverage for claims asserted against Megalomedia that allege "bodily injury" arising out of "any/all reality shows."

The other "four corners" involved in the eight-corners analysis are the four corners of the Second Amended Petition the underlying suit. ROA.232-48 (RE001-017).[4] The allegations in the petition fall squarely within the plain language of the reality TV exclusion. They state:

[E]ach show participant that is subject of this lawsuit was taken advantage of by a network and the producers of a ***reality show*** that was focused only on ratings, while neglecting the welfare of those who appeared on the show, including LB Bonner. Defendant Megalomedia produces ***reality television shows***. … **One of the Megalomedia Defendants'** ***reality television shows*** **is called "My 600-lb. Life**."

ROA.235 (RE004) (emphasis added).

---

[4] Philadelphia refers only to Bonner's Second Amended Petition because it is the only case still pending. The allegations in the other claimants' live pleadings are substantively identical, as they were all represented by the same attorney. All plaintiffs alleged that *My 600-lb Life* is a "reality show" and that their participation on the show caused their injuries. ROA.226-7; ROA.253-54; ROA.261-62; ROA.270-72; ROA.279-80; ROA.288-89; ROA.298-99; ROA.308-09; ROA.316-18. Thus, all fall within the scope of the reality TV exclusion, and Philadelphia had no duty to defend any of the now-dismissed claims.

The petition contends that Megalomedia should have known the risks associated with Bonner's participation in this type of reality TV show, but it failed to provide him with adequate mental-health assistance. ROA.236 (RE005). Finally, the petition alleges that Bonner's mental health continued to decline because of the show, leading him to commit suicide on August 2, 2018. ROA.240-42 (RE009-11).

Applying the eight-corners rule to these allegations, Philadelphia has no duty to defend Megalomedia against the underlying suit. The Philadelphia policies exclude "bodily injury" arising out of "any/all reality shows." ROA.460. (RE6). And, as shown above, the petition repeatedly uses this exact phrase to describe *My 600-lb Life*. ROA.235. (RE004). The petition also alleges that Bonner suffered "bodily injury" arising out of his filming and appearing on *My 600-lb Life*. ROA.236-40. (RE005-09). All the elements of the reality TV exclusion are satisfied. Therefore, the Court should affirm the district court's order.

### C. The phrase "any/all reality shows" is not ambiguous and has one reasonable meaning.

The reality TV exclusion applies to "any/all reality shows" and the petition specifically refers to *My 600-lb Life* as "[o]ne of the Megalomedia Defendants' reality television shows." ROA.235 (RE004). But, to avoid this result, Megalomedia claims for the first time on appeal that the phrase "any/all reality shows" as used in the exclusion is ambiguous. This argument fails because the phrase has one

reasonable meaning, especially when applied to the facts alleged in the petition, as required by Texas law.

In interpreting a contract, the court's primary objective is to "to ascertain and give effect to the parties' intent as expressed in the instrument." *U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 387 (Tex. 2023) (per curiam) (quoting *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018)). In so doing, the court's analysis begins with the contract's express language. *Kinsale Ins. Co. v. Flyin' Diesel Performance & Offroad, L.L.C.*, 99 F.4th 821, 826 (5th Cir. 2024). A contract that has "a clear and definite legal meaning" is unambiguous and is construed as a matter of law. *Id.* at 827 (quoting *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 257 (Tex. 2023)). If a term in an insurance policy has only one reasonable interpretation as applied to the facts of the claim, it is unambiguous. *URI,* 543 S.W.3d at 765.

The Court can find ambiguity only after exhaustion of "all the traditional tools of interpretation." *Flyin' Diesel*, 99 F.4th at 826 n.7 (citing *U.S. Polyco*, 681 S.W.3d at 389 n.1); *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020) ("We must first determine whether the Assignment is ambiguous, considering its language as a whole in light of well-settled construction principles and the relevant surrounding circumstances."). An insurance policy "may be unambiguous, as applied to one set of facts, but may take on characteristics of ambiguity in connection

with other facts." *Gold Coast Commodities, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 96 F.4th 769, 773 (5th Cir. 2024). The focus must always be on "**the actual activity creating liability**." *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 934 (Tex. 1998) (emphasis added).

Under this standard, the reality TV exclusion is unambiguous because it has only one reasonable meaning as applied to the facts. The petition specifically refers to *My 600-lb Life* as a "reality show" — the exact language used in the reality TV exclusion. ROA.232, 235-36 (RE001, 004); ROA.460 (RE6). Because the pleading and the exclusion employ the exact same phrase, there can only be one clear, definitive legal meaning. *Vaughan*, 968 S.W.2d at 934. The exclusion precludes coverage for "bodily injury" arising out of "any/all reality shows," and the underlying petition alleges that Bonner's injuries and death resulted from his filming and appearing on a "reality show." Consequently, the exclusion applies, and Philadelphia has no duty to defend the claims asserted in the underlying suit. The Court should affirm the district court's ruling.

### D. Megalomedia's interpretation of the reality TV exclusion is unreasonable because it ignores the phrase "any/all."

In interpreting insurance policies, courts must consider the entire contract and cannot ignore terms or render provisions meaningless. *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015). A policy is not ambiguous simply because the parties interpret it differently. *Tetra Techs., Inc. v. Cont'l Ins. Co.*, 814 F.3d 733, 747 (5th

Cir. 2016) (per curiam). An insured claiming that a policy is ambiguous must propose a genuinely reasonable interpretation of the contract. *Flyin' Diesel*, 99 F.4th at 827. If Megalomedia's interpretation of the exclusion is not reasonable, the Court cannot adopt it. *See id.* Megalomedia has not met this burden because it ignores the exclusion's plain language.

The reality TV exclusion applies to claims for "bodily injury" arising out of "any/all reality shows." ROA.460 (RE6). Megalomedia contends that when the exclusion refers to "any/all reality shows," what it really means is "*some*, but not all, reality shows." *See* Br. 16, 21-23 (discussing various types of "reality shows"). According to Megalomedia, "any/all reality shows" refers to one subcategory of reality shows—e.g., law enforcement shows—but not the subcategory of "docuseries like *My 600-lb. Life….*" Br. 17. This interpretation of the phrase "any/all reality shows" is inherently unreasonable because it ignores the descriptor "any/all."

The Supreme Court, this Court, and the Supreme Court of Texas all interpret the term "any" to have "an expansive meaning" that "ordinarily refers to a member of a particular group or class without distinction or limitation and in this way implies every member of the class or group." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) (cleaned up); *accord Lexon Ins. Co., Inc. v. Fed. Deposit Ins. Corp.*, 7 F.4th 315, 323 (5th Cir. 2021) (citing *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008)); *Nabors Well Servs., Ltd. v. Romero*, 456 S.W.3d 553, 562 (Tex. 2015).

"Any/all reality shows" means what it says: that every type of reality show is excluded from coverage. Holding otherwise would ascribe no meaning to the term "any/all" *Cf. LNG Ams, Inc. v. Chevron Nat. Gas*, No. CV H-21-2226, 2023 WL 2920940, at *5 (S.D. Tex. Apr. 12, 2023) (refusing to define the term "any particular" as "all" or "every" because it would eliminate meaning for the word "particular.").

As the district court noted, this does not mean that the Philadelphia policies provided no coverage at all for Megalomedia. The reality TV exclusion applies only to one part of one coverage provided by the policies—Coverage A of the commercial general liability coverage. *See* ROA.4523 ¶¶18-19 (RE4 at 5); ROA.460 (RE6) (specifying exclusion added to "Coverage A – Bodily Injury and Property Damage Liability"). The exclusion has no effect on the other coverages in the Philadelphia package policies, including inland marine, commercial property, and commercial auto. Nor does it apply to the liability coverage provided by the Firm Production Additional Coverages Form. ROA.4253 ¶19 (RE4 at 5). Megalomedia is implying that if the reality TV exclusion is interpreted and applied according to its plain language, it would obviate coverage for *any* loss. Megalomedia is wrong.

The reason Megalomedia pushes this strained interpretation of "any/all reality shows" is because it concedes that under the plain language of the exclusion, there is no coverage for the underlying claims. Megalomedia admits that "all

[Megalomedia productions] are reality-based in some capacity." Br. 17. Megalomedia also references Nowzaradan, acknowledging that "docu-style shows are just one type of sub-genre under the label 'reality TV.'" Br. 27 (citing ROA.5006-07). Likewise, Nowzaradan considers documentaries to be "a style of reality" with the differentiator being whether the show is episodic or not. Br. 26 (citing ROA.4992).

Thus, by Megalomedia's own admission, claims for "bodily injury" arising out of all of its shows are excluded by the reality TV exclusion. The only way to avoid this result is to interpret "any/all reality shows" to mean "some but not all reality shows" or "only certain subsets of reality shows." This interpretation is unreasonable, and the Court should reject it.

### E. Megalomedia ignores the eight corners rule.

Under the eight-corners rule, Megalomedia must also demonstrate that the underlying pleadings allege facts that are potentially covered by the Philadelphia policies. *Monroe*, 640 S.W.3d at 199; *Flyin' Diesel*, 99 F.4th at 829 (noting the insured "must still offer a reasonable construction of the CGL Policy that both resolves the uncertainty it previously identified and covers the facts alleged in the Underlying Litigation.") (cleaned up); *see Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) (noting that under Texas law, once an insurer proves that an exclusion applied, the burden rests with the insured

to prove an exception to the exclusion or that the exclusion is otherwise inapplicable.)

However, Megalomedia omits this imperative step. In fact, it

- never mentions, much less addresses, the eight-corners rule;

- never applies the facts alleged in the petition to its interpretation of the reality TV exception;

- never cites the underlying pleadings; and

- never discusses any of the facts alleged in the underlying petition.

Merely arguing that the reality TV exclusion is ambiguous without applying the facts to the policy does not satisfy Megalomedia's burden. *Gilbert*, 327 S.W.3d at 124. The Court should reject Megalomedia's attempt to circumvent long-established Texas law as set out by the Supreme Court of Texas and applied by this Court. The eight-corners rule is a necessary part of determining an insurer's duty to defend. Because Megalomedia has ignored it, this Court should affirm.

> **F.    Megalomedia failed to preserve its ambiguity argument and improperly relies on evidence adduced during the bench trial in challenging the summary judgment.**

Philadelphia filed a summary judgment on its duty to defend in the district court. The district court granted the motion, holding that the reality TV exclusion is unambiguous and that Philadelphia has no duty to defend Megalomedia in the underlying lawsuit. ROA.1761 (RE5). This Court reviews the district court's

summary judgment *de novo* using the same standard as the district court—whether summary judgment is proper under Rule 56. *Grogan*, 873 F.3d at 277 (citing FED. R. CIV. P. 56(a)). A *de novo* review of the record is limited to the evidence and arguments in the summary judgment record as presented to the district court. *Id.* As this Court has held, "although on summary judgment the record is reviewed *de novo*, this court typically will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on the motion." *Id.* (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 (5th Cir. 1992)) (cleaned up); *see In re Deepwater Horizon*, 739 F.3d 790, 798 (5th Cir. 2014) ("An appellate court may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the district court at the time of the challenged ruling.").

Accordingly, this Court's review of the summary judgment is limited to the evidence and arguments presented to the district court in 2021. This Court cannot consider either (1) arguments not presented to the district court or (2) evidence generated later for the 2023 trial on Megalomedia's fraud-based claims. Yet that is what Megalomedia relies on to create an ambiguity in the Philadelphia policy where none exists—a new argument and evidence not in the summary-judgment record—which cannot support reversal.

### 1. Megalomedia failed to preserve its argument that "reality TV" is an ambiguous term.

Megalomedia cannot assert now that the term "reality TV" is ambiguous because it did not raise this issue to the district court in its summary judgment briefing. In its summary-judgment brief, Philadelphia applied the eight-corners rule, as it does here, arguing that the reality TV exclusion precludes coverage as a matter of law. *See* ROA.210, 214. In response, Megalomedia did not assert that the term "reality show" is ambiguous, as it does on appeal. *See generally* Br. 19-30. Rather, it asserted that the reality TV exclusion applies opposite to its plain language. Specifically, Megalomedia maintained that that the items in the schedule—including "any/all reality shows—were exceptions to the exclusion and therefore *not excluded* from coverage. ROA.1375-77 ("The reasonable interpretation of the 'Designated Ongoing Operations' provision is that it does not exclude reality-TV shows."). Megalomedia never argued to the district court that the term "reality TV" is ambiguous.

To make this argument, which it has abandoned on appeal, Megalomedia had to concede that *My 600-lb Life* is a reality show. For example, Megalomedia:

- refers to itself as "a reality-TV production company," ROA.1370;

- admits that a "series of lawsuits were filed in Harris County District Court by current and former participants or family members of one of Megalomedia's reality-TV shows, *My 600-lb Life*," *id*.;

31

- states that "[i]n 2012 it began producing a reality-TV show called *My 600-lb Life*," ROA.1371;

- acknowledges that on the policy applications, "Megalomedia represented it was producing reality-TV shows, including *My 600-lb Life*," *id.*; and

- states, when characterizing Philadelphia's coverage position, that "Philadelphia claims the Exclusion excludes claims arising out of reality-TV shows like *My 600-lb Life* from coverage," ROA.1375.

Moreover, Megalomedia's live pleading when the parties filed their summary-judgment briefs concedes that *My 600-lb Life* is a "reality TV show." ROA.110 ¶4.1.

The district court rejected Megalomedia's interpretation of the reality TV exclusion, holding that "any/all reality TV" as used in the schedule described the operations that are excluded from coverage. ROA.1761-62 (RE 5 at 10-11). It never addressed whether the term "reality show" is ambiguous because Megalomedia never asserted that it was and, in fact, pleaded that *My 600-lb Life* is a reality show. *E.g.,* ROA.1370-71.

Not only has Megalomedia abandoned its argument made in the district court, it now argues the opposite: the term "reality show" is ambiguous and *My 600-lb Life* is ***not*** a reality show. *E.g.*, Br. 29 ("As shown above, the term 'reality show' is subject to more than one reasonable interpretation, and the parties' course of performance confirms that Megalomedia's weight-based shows like *My 600-lb Life*

would not be subject to the 'reality show' exclusion."). The Court should not consider this argument because it was never presented to the district court.

The Court has disregarded an insured's ambiguity argument when the insured similarly failed to raise it in response to a summary judgment in the district court. *See Sentry Equities, Ltd. v. Allstate Life Ins. Co.*, No. 22-20024, 2022 WL 16549210, at *3 (5th Cir. Oct. 31, 2022) (per curiam). In that case, the insured sued Allstate over the applicable interest rate of return in a single-premium life insurance policy. *Id.* at *1. In the district court, the insured did not argue that the policy was ambiguous, but, rather, asserted that the policy's terms did not give Allstate the right to change the interest rate of return. *Id*. at *2. The district court granted Allstate's summary judgment, and the insured appealed, arguing that the policy's interest rate provisions were contradictory and therefore ambiguous. *Id.* at *3. The Court refused to consider that argument because it was not raised to the district court. *Id*.

Here, Megalomedia employs the same tactic, and the Court should likewise reject it. Megalomedia asserted in its summary-judgment briefing that Philadelphia applied the reality TV exclusion incorrectly and that *My 600-lb Life* is a reality show. ROA.1375-81. This is essentially the insured's argument in *Sentry*. *See* 2022 WL 16549210, at *3 ("Hence, the sole question is whether the Policy empowers Allstate to vary the interest in the Policy from time-to-time within its discretion. The Court is of the opinion that the Policy permits Allstate to vary [the] rate(s) of interest

earned. . ."). But now, Megalomedia argues not that Philadelphia applied the exclusion incorrectly, but that a specific term of the exclusion is ambiguous and that *My 600-lb Life* is not a reality show within the meaning of the exclusion. Compare Megalomedia Br. 21-24 with *Sentry*, 2022 WL 16549210, at *3 ("On appeal, however, Haas makes the opposite argument by contending that '[t]he life insurance policy in question contains, at best, two phrases which are contradictory.'"). This tactic should be rejected here, as it was in *Sentry*.

### 2. Megalomedia improperly relies on evidence outside the summary-judgment record

This Court's *de novo* review of the order granting Philadelphia's Motion for Summary Judgment is limited to the evidence in the summary judgment record. *See Grogan*, 873 F.3d at 277. Nevertheless, Megalomedia cites almost exclusively to evidence that was introduced at trial in 2023 and that was not part of the summary judgment record that was before the district court in 2021. *See* ROA.1761 (RE5 at 10) ("[T]he Court finds that the Policies are unambiguous and, consequently, will not consider extrinsic evidence.").

Philadelphia filed its summary judgment motion in November 2020 and attached only the underlying petitions and the various Philadelphia policies in accordance with the eight-corners rule. ROA.199, 204-06. Megalomedia filed its response on December 21, 2020 and attached declarations from two employees, the 2010 policy, two applications, pleadings from the underlying lawsuits, and discovery

requests. ROA.1389.[5] The district court entered its ruling on June 1, 2021. ROA.1752. Any live testimony or other evidence adduced at the bench trial in February 2023 is not part of the summary-judgment record and was not presented to or considered the by district court in its summary-judgment ruling. They can therefore not be considered by this Court when reviewing that order. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (refusing to consider evidence generated after district court's summary judgment ruling "because our review is confined to an examination of materials before the lower court at the time the ruling was made; subsequent materials are irrelevant.").

Megalomedia's use of this evidence also violates the strictures of the eight-corners rule. In determining the duty to defend, extrinsic evidence can never be used to contradict the underlying pleading. *Monroe*, 640 S.W.3d at 200; *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 (Tex. 2009) (refusing to allow insured to introduce evidence that its subcontractors built house when pleadings alleged that insured built house). Here, the underlying pleadings plainly allege that *My 600-lb Life* is a "reality show." ROA.235. However,

---

[5] Philadelphia moved to strike much of this evidence as not admissible under the eight-corners rule, but the court denied that motion. ROA.1751. However, the court did not consider extrinsic evidence in its summary judgment order. ROA.1761 (RE5 at 10).

Megalomedia seeks to introduce this extrinsic evidence to prove that *My 600-lb Life* is not a reality show. Br. 27 (asserting *My 600-lb Life* is not a reality show).

Therefore, all trial testimony—including that of Jonathan Nowzaradan and Jennifer Costantini—is not relevant and thus cannot be considered by the Court in its *de novo* review of the summary-judgment ruling. And documents introduced at trial that were not attached to either party's summary-judgment briefing also cannot be considered in review of the summary judgment order. This includes Philadelphia's underwriting guidelines (Br. 21 (citing ROA.4794-96; ROA.5231; ROA.5259-60)); email communications (Br. 23-24 (citing ROA.6182, ROA.5236-37)); and insurance applications (Br. 28 (citing ROA.6026; ROA.6250–51; ROA.7933)).

### G. Megalomedia's position is belied by the record.

Putting the other significant shortcomings of Megalomedia's argument aside, the root of Megalomedia's position is that it thought the exclusion for "any/all reality shows" did not include *My 600-lb Life* because that show is not a reality show. Br. 30. But this argument is disproven by the record. The record shows that Megalomedia considered *My 600-lb Life* a reality show when it purchased the policy each year and knew about the reality TV exclusion.

"When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent." *Forbau v. Aetna Life Ins. Co.*, 876

S.W.2d 132, 133 (Tex. 1994). Here, the evidence demonstrates that both Philadelphia and Megalomedia knew that the general liability coverage Megalomedia purchased excluded reality shows like *My 600-lb Life*. Therefore, the reality TV exclusion cannot be ambiguous—both parties to the contract knew of and understood the intent of the exclusion.

Megalomedia purchased a series of commercial package insurance policies from Philadelphia covering the years 2010 through 2020. ROA.4730 at 83:2-11, ROA. 4731 at 84:12-19, 86:17-25, 94:18-22, 100:17-21, 103:22-104:9; ROA.4915 74:4-10. The process for purchasing these policies involved Megalomedia filling out an application for insurance and sending it to Philadelphia. ROA.4730, at 83-19-23. Philadelphia would then send Megalomedia, via its insurance broker, a proposal for insurance, which Megalomedia could accept or reject. ROA.4723 at 76:15-23, ROA.4721-22 at 74:17-75:3. Megalomedia accepted these proposals without any requested changes every year. ROA.4730 at 83:2-11, ROA. 4731 at 84:12-19, 86:17-25, 94:18-22, 100:17-21, 103:22-104:9; ROA.4915 74:4-10. Philadelphia never "approved" applications or specific shows, as Megalomedia contends in its brief. *E.g.*, Br. 13. Megalomedia's own insurance broker, Jason McKinley, confirmed that the process began with Megalomedia submitting an application to Philadelphia, and, in response, Philadelphia would send back a proposal that specified exactly the insurance it offered to write. ROA.4711-13, at 64:3-66:10. This proposal was the

actual offer for insurance coverage that Megalomedia could accept, reject, or negotiate. ROA.4721-22, at 74:22-75:3. McKinley, who Megalomedia's founder considers his "insurance expert"[6] confirmed multiple times that applications were not "approved," as Megalomedia continues to assert in its brief. ROA.4723, at 76:3-23; ROA.4758, at 111:18-19; ROA.4762, at 115:13-21; ROA.4764-65, at 117:23-118:10. The district court agreed, finding that "Megalomedia's insurance applications were not immediately 'approved' for coverage. Instead, Philadelphia would submit a proposal for insurance that Megalomedia could accept or reject." ROA.4525 ¶30. To assert otherwise is, at best, to ignore the undisputed record and contradict the testimony of Megalomedia's insurance broker and expert.

This is important because every year, beginning with the first renewal in 2011, Philadelphia sent Megalomedia a proposal for insurance that specifically listed the reality TV exclusion. ROA.4730 at 83:2-11, ROA.4731 at 84:12-19, ROA.4733 at 86:17-25, ROA.4741 at 94:18-22, ROA.4747 at 100:17-21, ROA.4750 at 103:22-104:9. Philadelphia's agent knew about the exclusion because it was listed on the proposal, and every year, Megalomedia accepted the proposal. *Id.*[7]

---

[6] ROA.5022-23, at 181:25-182:3.

[7] Although Philadelphia did reject specific coverage requests for two particular shows, these rejections were denials of coverage altogether. ROA.4527 ¶36 (citing ROA.4768 at 121:6-17). In other words, Philadelphia refused to write any coverage at all for these shows, including general liability, inland marine, and auto. *Id*. at 121:15-23.

Additionally, in 2015, Philadelphia specifically reminded Megalomedia's agent that "any/all reality shows" were excluded from liability coverage and required Megalomedia to produce certificates of insurance as proof of liability coverage for these shows from other insurers as a prerequisite for issuing the policy. ROA.6477-78; ROA.4738 at 91:12-23. Megalomedia provided certificates of insurance for several reality shows, including *My 600-lb Life* and other weight loss shows. ROA.4734-37 at 87:24-90:6; *see also* ROA.6437-38. The same thing occurred again in 2016 and 2017. ROA.6583; ROA.4742 at 95:1-18; ROA.4747-48 at 100:17-101:1; ROA.6754, 6752, 6756; ROA.4749 at 102:1-15; ROA.4936-37 at 95:10-96:1.

In 2015, 2016, and 2017, Philadelphia requested that Megalomedia provide its gross-production costs for its non-reality show programming, and Megalomedia sent Philadelphia its gross-production numbers that did not include any production costs for *My 600-lb Life*. ROA.6496; ROA.4927 at 86:2-7; ROA.4928 at 87:22-24; ROA.6589; ROA.4934-35 at 93:24-94:4; ROA.4744 at 97:4-8.

These key pieces of evidence demonstrate the shortcoming of Megalomedia's appeal. They show that Megalomedia was aware that the Philadelphia policy excluded bodily injury arising out of "any/all reality shows" when it renewed the policy year after year by accepting the proposals. The evidence also shows that Megalomedia itself considered *My 600-lb Life* a reality show because it provided the

certificates and gross production costs. Megalomedia ignores this evidence. The Court should not.

Megalomedia attempts to avoid the effect of this evidence by applying Parties so-called course-of-performance to interpret the reality TV exclusion. Br. 27-29. This argument is misplaced.

First, it is based on the faulty premise that Philadelphia "approved" or "rejected" applications. Br. 28-29. As discussed *supra*, this is not the process that took place. Each year on renewal, Megalomedia filled out and submitted a renewal application, and, in response, Philadelphia returned an offer of insurance, that Megalomedia could reject, accept, or negotiate. ROA.4723, at 76:3-23; ROA.4758, at 111:18-19; ROA.4762, at 115:13-21; ROA.4764-65, at 117:23-118:10. The applications were never "approved," and they did not control the insurance that was ultimately bound. *Id.* Both Jason McKinley, Megalomedia's insurance expert and broker, and the district court recognized that this the contractual process. *Id.*; ROA.4525 ¶30.

Second, while Megalomedia characterizes this evidence as "course of performance" it is not. The course of performance of parties to a contract "refers to a sequence of conduct between the parties to a particular transaction that takes place **during the performance of the contract at issue**." *Proton PRC, Ltd. v. ET & AS Invs., Inc.*, No. 02-21-00258-CV, 2022 WL 488939, at *5 (Tex. App.—Fort Worth

Feb. 17, 2022, no pet.) (emphasis added); *see also* TEX. BUS. & COM. CODE § 1.303(a) (defining "course of performance" under UCC). The contracts in question here are the policies formed by Philadelphia and Megalomedia. Megalomedia's "course of performance" evidence relies on Megalomedia's requests for separate contracts, apart from the existing policies, to cover the shows *Cartel City* and *Fugitive Recovery*. ROA.4527 ¶36 (citing ROA.4768 at 121:5-17). The Parties' course of performance under the existing policies cannot be based on separate negotiations for contracts that were never formed.[8]

Third, the Parties actual course of performance demonstrates that the Parties knew and understood that the reality TV exclusion applied to *My 600-lb Life*. As laid out above, each year on renewal of the policy beginning in 2011, Philadelphia sent Megalomedia's agent a proposal for insurance that specifically listed the reality TV exclusion, and contained a conspicuous merger clause. *E.g.,* ROA.6380, 6393. Megalomedia accepted it each year without modification. Further, when Philadelphia conditioned binding the new policy on receipt of liability insurance certificates for its reality shows and gross production costs excluding its reality

---

[8] Megalomedia also implies that in deciding this appeal, the Court should consider Megalomedia's own expectation of how the reality TV exclusion would be applied. Br. 35 (stating the "relevant question" is what Megalomedia was led to believe based on communications after the exclusion was on the policy). This concept is what is commonly called the "reasonable expectations doctrine" and has been expressly rejected by Texas courts. *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 648 (5th Cir. 2008); *see also Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 458 (5th Cir. 2009).

shows, Megalomedia sent certificates evidencing coverage for *My 600-lb Life* and gross production costs not including *My 600-lb Life*.

## H. The same facts that negate the duty to defend preclude any possibility of a duty to indemnify.

Philadelphia moved for, and the district court granted, summary judgment on Philadelphia's duty to indemnify Megalomedia as well.[9] ROA.219-20; ROA.1765-66. This Court should affirm.

The duty to indemnify is determined by the actual facts establishing liability in the underlying suit. *D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009); *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011). While the duty to indemnify generally is justiciable after the facts are established, the duty to indemnify can be justiciable earlier when the insurer has no duty to defend, "and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997); *Cont'l Cas. Co. v. Consol. Graphics, Inc.*, 646 F.3d 210, 218 (5th Cir. 2011); *see also Country Oaks*, 566 F.3d at 458 ("However, where an exclusion that precludes the

---

[9] Because all the other underlying claimants' suits, other than Bonner's, were dismissed with prejudice, only Bonner's suits could ever trigger a duty to indemnify. ROA.4530 ¶51.

duty to defend would also preclude indemnity, courts are permitted to decide the duty to indemnify in advance of the underlying liability lawsuit's end.").

In this case, the district court rightly held that Philadelphia has no duty to indemnify Megalomedia against the underlying claims. The entire basis for underlying claims is Bonner's involvement in the reality show *My 600-lb Life* and his resulting death. Absent *My 600-lb Life*, there are no claims and no lawsuit. Even if the underlying lawsuit establishes that *My 600-lb Life* was one cause of Mr. Bonner's "bodily injury" the reality TV exclusion would still preclude coverage for the claims. This Court holds that "under Texas law, when an exclusion prevents coverage for injuries 'arising out of' particular conduct, '[a] claim need only bear an *incidental relationship* to the described conduct for the exclusion to apply.'" *Scottsdale Ins. Co. v. Mt. Hawley Ins. Co.*, No. M-10-58, 2011 WL 9169946, at *5 (S.D. Tex. Jun. 15, 2011) (emphasis in original) (quoting *Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999)). Such an exclusion "is given a broad, general, and comprehensive interpretation." *Id.* (quoting *Scottsdale*, 173 F.3d at 943). The words "arising out of" mean "originating from, having its origin in, growing out of or flowing from." *Id*. (quoting *Red Ball Motor Freight, Inc. v. Emp'rs Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir. 1951) (internal quotations omitted). Thus, any causal relationship between Mr. Bonner's injuries and his participation in *My 600-lb Life* will trigger the exclusion.

While this Court recently cautioned against the over-application of the *Griffin* exception, this case falls squarely with *Griffin*. *Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*, 75 F.4th 522, 535 (5th Cir. 2023). The facts of this case are much more akin to those in *Griffin* than in *Copart*. In *Copart* the Court held that *Griffin* did not apply because the duty to defend was negated by a pollution exclusion, and the underlying lawsuit may have uncovered evidence of damage not caused by "pollutants." 75 F.4th at 536-37. There is no such possibility here. All of Mr. Bonner's injuries arise out of his participation in the reality show *My 600-lb Life*. Therefore, the Court should affirm the district court's conclusion that Philadelphia has no duty to indemnify as well. *See D.R. Horton*, 300 S.W.3d at 745; *see also Nationwide Mut. Ins. Co. v. Choi*, No. 23-20405, 2024 WL 2131515, at *1 (5th Cir. May 13, 2024) (per curiam) (affirming district court's application of *Griffin* to hold insurer had no duty to indemnify insured at summary judgment stage).

## I.    Conclusion: The Court should affirm the summary judgment.

The Court should affirm the district court's summary judgment order. Under the eight-corners rule, Philadelphia has no duty to defend Megalomedia against the underlying claims. The underlying plaintiffs allege that they were injured as a result of filming and appearing on *My 600-lb Life*, which is specifically alleged to be a reality show. The Philadelphia policy excludes "bodily injury" arising out of "any/all

reality shows." The policy, as applied to the facts alleged, unambiguously excludes the underlying claims. Therefore, Philadelphia has no duty to defend Megalomedia.

Megalomedia's attempt on appeal to create an ambiguity to avoid the simple application of the eight-corners rule fails. The best interpretation of the exclusion that Megalomedia can muster is that "any/all reality shows" to mean "some but not all reality shows." This interpretation, a new argument on appeal that contradicts Megalomedia's position in the district court, defies common sense and is plainly unreasonable.

Finally, even taking Megalomedia's brief at face value, its position is belied by the whole of the appellate record. For these reasons, this Court should affirm the district court's order granting Philadelphia's summary judgment.

## II. The Court Should Affirm The District Court's Findings And Conclusions.

Megalomedia also appeals the district court's judgment that Megalomedia take nothing on its claims for fraudulent inducement, violation of the DTPA, and violation of the Texas Insurance Code. Br. 3.

The district court found that Megalomedia did not establish the essential elements of any of its claims at trial. ROA.4535 ¶72; ROA.4537 ¶¶82-83. This Court reviews the district court's findings of fact for clear error, and its conclusions of law *de novo*. *Hess*, 26 F.4th at 233. "A district court's finding of fact is clear error only

if it is implausible in the light of the record considered as a whole." *Hess*, 26 F.4th at 233 (cleaned up).

### A. The district court correctly found that Megalomedia knew the reality TV exclusion applied to *My 600-lb Life*.

Megalomedia challenges two points undergirding the final judgment. The first is that "Megalomedia had constructive knowledge and should have known that the reality show exclusion would apply to *My 600-lb Life*." Br. 34, 42.[10] Specifically, the district court's findings of fact provide:

> Given the foregoing, including being specifically told about the CG2153 reality TV exclusion; being asked for certificates of insurance for reality TV shows and providing certificates of insurance for *My 600-lb. Life*; and being asked for gross production costs less reality TV shows and providing costs excluding *My 600-lb. Life*, Megalomedia had constructive knowledge-or at the very least, should have known-of the unambiguous reality TV exclusion and the fact that *My 600-lb. Life* was considered a reality TV show.

ROA.4529-30 ¶50 (RE 4 at 11-12). The Court should reject this point of error because it is legally impossible and because the factual record overwhelmingly supports it.

---

[10] This issue concerns Megalomedia's reliance on Philadelphia's representations. Two common elements among all Megalomedia's statutory claims are (1) a material misrepresentation or omission, on which (2) Megalomedia relied. ROA.4532 ¶59; ROA.4537 ¶80; *see also Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (reciting elements of fraud claim); TEX. INS. CODE §§ 541.060(a), 541.051, 541.061; TEX. BUS. & COMM. CODE § 17.46. The trial record confirms that Megalomedia established neither.

### 1. Megalomedia is charged with knowledge of the reality TV exclusion and its one reasonable meaning as a matter of law.

The parties agree that Megalomedia's fraud and statutory claims are contingent on the Court determining that the reality TV exclusion precludes coverage for the underlying litigation. Br. 18, 30-31. This means that when considering whether the district court erred, this Court must have already determined that (1) The reality TV exclusion is unambiguous—*i.e.*, has only one reasonable meaning; and (2) *My 600-lb Life* is a reality show. Megalomedia's first point of error with regard to the trial outcome fails to recognize this point. Megalomedia claims that the district court erred when it "concluded that Megalomedia had constructive knowledge, or at least should have known, that *My 600-lb Life* was an excluded 'reality show.'" Br. 34. But this cannot legally be true because, to even consider whether the district court erred, this Court must have already found that the reality TV exclusion is unambiguous—*i.e.*, has only one reasonable meaning—and that *My 600-lb Life* is a "reality show" within the scope of the exclusion.[11] Otherwise, as Megalomedia itself acknowledges, the trial portion of Megalomedia's appeal is moot. Br. 30. Thus, the very premise of Megalomedia's first point of error is flawed.

---

[11] At the time of the trial, the district court had already determined that the reality TV exclusion as unambiguous and that My 600-lb. Life was a reality show within the scope of the exclusion. ROA.4531 ¶56. Megalomedia never asked the district court to reconsider this finding.

Texas law only exacerbates the problem with this point of error. Under Texas law, Megalomedia has an affirmative duty to read the policy and is charged with notice of the policy's provisions, including the unambiguous reality TV exclusion. *Morris Cnty. Nat. Bank v. John Deere Ins. Co.*, 254 F.3d 538, 541 (5th Cir. 2001); *Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp. 2d 686, 706 (S.D. Tex. 2002), *aff'd*, 71 Fed. Appx. 441 (5th Cir. 2003). "[A] party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 658 (Tex. 2018). These concepts, combined with the fact that the reality TV exclusion must be unambiguous and have only one meaning, negate any potential argument that Megalomedia relied on Stalnaker's 2011 email or any other alleged misrepresentation with regard to how the policy would be applied. In other words, Texas law charges Megalomedia with knowledge that the policy unambiguously excludes coverage for bodily injury arising out of "any/all reality shows," including *My 600-lb Life*. It therefore had no excuse to believe otherwise.

Thus, as a matter of Texas law, Megalomedia knew, or was charged with knowledge, that the reality TV exclusion has one reasonable meaning, and that *My 600-lb Life* is a reality show within the scope of that exclusion. Megalomedia has failed to establish that the district court's finding is clearly erroneous.

2.  **The trial record removes any doubt that Megalomedia was aware of the reality TV exclusion or its applicability to *My 600-lb Life*.**

The fallacy of Megalomedia's point aside, the facts in the record support the district court's findings. The evidence conclusively establishes that Megalomedia was aware that the policy contained the exclusion and that *My 600-lb Life* fell within the exclusion. Each year on renewal, Philadelphia sent Megalomedia a proposal for insurance that specifically listed the reality TV exclusion. ROA.4730 at 83:2-11, ROA.4731 at 84:12-19, ROA.4733 at 86:17-25, ROA.4741 at 94:18-22, ROA.4747 at 100:17-21, ROA.4750 at 103:22-104:9. Philadelphia's agent, Jason McKinley, knew about the exclusion because it was listed on the proposal, and every year Megalomedia accepted the proposal to renew the policy. *Id*. McKinley admitted that Stalnaker's email had no bearing on the coverage offered by Philadelphia's proposal for insurance it sent to Megalomedia and no bearing on the coverage afforded by the policy. ROA.4720 9:13. McKinley even testified that Stalnaker's email had no part in Megalomedia's decision to renew the policy in 2011. ROA.4730 at 83:12-18. Further, in November 2015, leading up to the renewal of the 2015-16 policy, Philadelphia specifically reminded Megalomedia's agent that "[t]he Reality TV portion of this account is excluded on the CG2153." ROA.6477; ROA.4738 at 91:12-23. Megalomedia still chose to renew the policy. ROA.4739 at 92:19-93:1. This also occurred in 2016. ROA.4528 ¶45 (citing ROA.6583; ROA.4742 at 95:1-

18). This is direct evidence that Megalomedia knew about the exclusion and chose to renew the policy anyway.

Further, the trial evidence demonstrates that Megalomedia knew that *My 600-lb Life* is a reality show subject to the exclusion. In 2015, Philadelphia required that Megalomedia provide certificates of insurance as proof of liability coverage from other insurers for Megalomedia's reality TV productions. ROA.4528 ¶43 (citing ROA.4677; ROA.4738 at 91:12-23). Philadelphia required these certificates as proof of general liability coverage for these other shows before it would bind the Philadelphia policies. ROA.4528-29 ¶45 (citing ROA.6583; ROA.4747-48 at 100:17-101:1). Megalomedia provided certificates of insurance for several reality shows, including *My 600-lb Life*. ROA.4528 ¶43 (citing ROA.4738 at 87:24-90:6; ROA.6437-38). Megalomedia did the same thing again in 2016 and 2017. ROA.4528-29 ¶¶45, 46 (citing ROA.6583; ROA.4742 at 95:1-18; ROA.6583; ROA.4747 at 100:17-101:1; ROA.6754, 6752, 6756-60; ROA.4749 at 102:1-15; ROA.4742-43 at 95:10-96:1. The other insurance obtained by Megalomedia for its reality TV productions was mandated by the networks and written on a per-show basis. ROA.4527 ¶38-39 (citing ROA.4944 at 103:22-104:4). Megalomedia represented to those insurers that *My 600-lb Life* is a reality show. ROA.4527 ¶40 (citing ROA.10068).

Further, in 2015, 2016, and 2017, Philadelphia requested that Megalomedia provide its gross production costs for its non-reality show programming, and Megalomedia sent Philadelphia its gross production numbers that did not include any production costs for *My 600-lb Life*.[12] ROA.4529 ¶¶43, 47 (citing ROA.6495; ROA.4927 at 86:2-7; ROA.4928 at 87:22-24; ROA.6589; ROA.4934-35 at 93:24-94:4; ROA.4744 at 97:4-8. Importantly, Philadelphia's request was for gross production costs less the costs for reality TV productions, not for gross production costs less the costs for *My 600-lb Life*. ROA.4528 ¶44 (citing ROA.6495-96). The decision to exclude *My 600-lb Life*'s costs was solely Megalomedia's.

The trial record manifestly supports the district court's conclusion that Megalomedia was on notice of the reality TV exclusion and the fact that *My 600-lb Life* is a reality show subject to the exclusion. Megalomedia has failed to show that this finding is "implausible in light of the record as a whole." *Hess*, 26 F.4th at 233. Therefore, the Court should reject this point and affirm the district court's judgment.

### 3.     Philadelphia made no material omission.

Although it appears that Megalomedia is not challenging this point, the District Court also held that Philadelphia cannot be held liable for not explaining that the reality TV exclusion precludes coverage for "bodily injury" arising out of

---

[12] Philadelphia requested this information because the premium it charged for general-liability coverage part was based in part on the gross-production costs of the shows covered by the policy. ROA.4744-45 at 97:23-98:3.

"any/all reality shows." ROA.4534 ¶ 67. To the extent necessary, this Court should affirm.

Under Texas law, an insurer has no duty to affirmatively explain to the insured what is and what is not covered by the policy. *Burton v. State Farm Mut. Auto. Ins. Co.*, 869 F. Supp. 480, 486 (S.D. Tex. 1994), *aff'd*, 66 F.3d 319 (5th Cir. 1995); *Avila v. State Farm Fire & Cas. Co.*, 147 F. Supp. 2d 570, 581 (W.D. Tex. 1999); *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 392 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Ruiz v. Gov't Emps. Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.— El Paso 1999, no pet.). Thus, Philadelphia had no duty to explain to Megalomedia the effect of the reality TV exclusion, especially in light of the fact that it is unambiguous and has only one reasonable meaning. Further, as shown in the previous section, Megalomedia's conduct — supplying certificates of insurance for its reality shows, including *My 600-lb Life* and excluding production costs of reality shows, including *My 600-lb Life* — demonstrates that it knew about the reality TV exclusion and that *My 600-lb Life* is a reality show subject to the exclusion. Therefore, as with its standard fraud claims, Megalomedia cannot show that it relied on any omission, even if there were one.

**B.    Stalnaker's email was not a misrepresentation of specific policy terms actionable under Texas law.**

The second issue Megalomedia raises is the district court's application of Texas law as most recently set out in this Court's decision in *Finger Oil & Gas,*

*Incorporated, v. Mid-Continent Casualty Company*. No. 22-50432, 2023 WL 581650, at *3 (5th Cir. Jan. 27, 2023) (per curiam); Br. 34, 42. Specifically, Megalomedia's case entirely relies on a June 6, 2011 email from a Philadelphia sales representative, Don Stalnaker, to Megalomedia's broker. ROA.6144. Megalomedia's position is that Stalnaker's statement in this email—that Philadelphia was generally "okay with" what Megalomedia was doing—supersedes the unambiguous terms of the policy and the next decade of the Parties' interactions. The district court rightly rejected this argument, and this Court should affirm. ROA.4523 ¶20.

> **1.** **The Court recently held in *Finger Oil & Gas* v. Mid-Continent Casualty that a statement about a policy's coverage, in light of a specific claim, was not actionable.**

The *Finger Oil* case addressed the same situation as here: whether a statement about the coverage afforded by a liability insurance policy supported misrepresentation claims under the Insurance Code and DTPA. *Finger Oil*, 2023 WL 581650, at *3. That case arose from an accident caused by a valve blow out at a natural gas drilling site. *Id*. at *1. After the blow out, the insured's agent contacted an underwriter at Mid-Continent and specifically asked the underwriter to "confirm that this insured has Blow Out and Cratering coverage and advise the limit." *Id*. The underwriter confirmed that the policy included blow out and cratering coverage by explaining that if the policy did not have that coverage, a box on the declarations

page would be checked, and the box was not checked. *Id*. The agent, in turn, informed the insured that the policy did have blow out and cratering coverage. *Id*.

The insured then hired several contractors to clean up and repair the well at a cost of more than $650,000. *Id*. When the insured sought reimbursement for these costs under the policy's blow out and cratering coverage, Mid-Continent denied the claim, relying on two policy exclusions contained in the blow out and cratering coverage form. *Id*. at *1-2. Finger Oil sued, alleging that the Mid-Continent underwriter misrepresented the policy's coverage. *Id*. at *2. The district court granted summary judgment for Mid-Continent, and this Court affirmed. *Id*. at *3.

This Court held that the underwriter's email was not an actionable misrepresentation under the DTPA or Insurance Code because it accurately confirmed that the policy did provide blow out and cratering coverage, even though the specific claim at issue was excluded. *Id*. It was not a "misrepresentation of specific policy terms, but, rather, a "general statement that the policy included such coverage," despite the fact that the specific claim was not covered under the policy. *Id*. The Court recognized that the unambiguous terms of the policy excluded the claim at issue, and that courts "presume parties intend what the words of their contract say." *Id.* (quoting *Gilbert*, 327 S.W.3d at 126). Thus, the email was not an actionable misrepresentation, and Finger Oil's claims failed as a matter of law. *Id*. at **3-4.

### 2. Stalnaker's email is less specific than the representation in *Finger Oil* and occurred nine years before the underlying *My 600-lb Life* litigation.

The district court correctly determined that Stalnaker's June 6, 2011, email "was a general statement that the Philadelphia issued policy provided coverage, rather than a misrepresentation of specific policy terms." ROA.4533 ¶64; *see Avila v. State Farm Fire & Cas. Co.*, 147 F. Supp. 2d 570, 581 (W.D. Tex. 1999) (holding that absent a specific misrepresentation of a policy term, the insured's mistaken belief about coverage is not grounds for a misrepresentation claim).

On its face, Stalnaker's email does not reference any specific policy term. ROA.6144. He sent the email to explain why Philadelphia would not write a separate policy for a new production called *Cartel City*. ROA.4811-12 at 164:19-165:10. It was not about the reality TV exclusion at all. ROA.4813 at 166:5-24. Stalnaker testified at trial that the "okay with" language was to "explain[] to [Megalomedia] that we're not changing the policy. We were okay with the way it was written." ROA.4801 at 154:13-19. The district court found that this was the meaning of the email. ROA.4522-23 ¶16.

Based on these facts, the district court, applying *Finger Oil*, held that the email was a general statement that Philadelphia's package policies provided coverage at that time, rather than a misrepresentation of specific policy terms. ROA.4533 ¶64; ROA 4536-37 ¶78. This Court should affirm that conclusion because Stalnaker's

statement is even more general and attenuated from the claim than the statement of the underwriter.

In *Finger Oil*, the representation in question was made in response to a specific inquiry about a claim already pending. *Finger Oil*, 2023 WL 581650, at *3. Here, Stalnaker's email is an even more generalized—a confirmation that the package policy provides certain coverage without any comment on whether exclusions apply to a specific claim. ROA.4522-23 ¶16; ROA.4523-24 ¶25. The email does not refer to any specific coverage type (ROA.6114), and it occurred nine years before the *My 600-lb Life* litigation began. ROA.5007 at 166:23-25. *My 600-lb Life* did not even exist at the time Stalnaker sent the email to Megalomedia's broker. Br. 13; ROA.6250-51. The district court found that Philadelphia's refusal to write these other shows has no bearing on the existing policies issued to Megalomedia. ROA.4527 ¶35 (citing ROA.4768 at 121:8-23).

Likewise, Megalomedia's argument that Stalnaker's email supports statutory claims under *USAA Texas Lloyds Company v. Menchaca* fails. Br. 39 (citing 545 S.W.3d 479 (Tex. 2018)). In *Menchaca*, the Supreme Court of Texas held that it is possible for an insured to collect policy benefits as statutory damages if an insurer misrepresents that the policy provides benefits that is does not provide ***and*** "the insured is 'adversely affected' or injured by its reliance on the misrepresentation." *Menchaca*, 545 S.W.3d at 497. Megalomedia cannot recover under this theory

because it requires that the insured have reasonably relied on the alleged misrepresentation. *See Drees v. Phila. Am. Life Ins. Co.*, No. 4:20-CV-03607, 2023 WL 25381, at *6 (S.D. Tex. Jan. 3, 2023), *rpt. & rec. adopted*, 2023 WL 319957 (S.D. Tex. Jan. 19, 2023) (holding that because insured's interpretation of policy is unreasonable, insured cannot recover under Menchaca because "such an argument still requires a reasonable belief, which is not present in this case.); *Schuerger v. Farmers New World Life Ins. Co.*, No. SA-18-CV-584-XR, 2019 WL 13150018, at *11 (W.D. Tex. Oct. 31, 2019).

As discussed in detail above, Megalomedia cannot have relied on Stalnaker's email because it is charged with knowledge of the unambiguous reality TV exclusion as a matter of law. *Morris Cnty. Nat. Bank*, 254 F.3d at 541. Further, Megalomedia's own actions demonstrate that "Megalomedia had constructive knowledge-or at the very least, should have known-of the unambiguous reality TV exclusion and the fact that My 600-Lb Life was considered a reality TV show." ROA.4529-30 ¶ 50. Therefore, Megalomedia cannot establish that it was adversely affected or injured by its alleged reliance on Stalnaker's email.

In short, Megalomedia cannot claim reliance on one general statement in 2011 while ignoring the plain language of the policy and its own actions over the next decade. This position is untenable because it is contrary to Texas law, and it requires the Court to hold that this email supersedes everything said and done between the

parties for the next decade. The Court should reject that assertion, just as the district court did.

## C.    Conclusion: The Court should affirm the final judgment.

Megalomedia has not shown that the district court erred. To reach the district court's rulings, this Court must have already found that the reality TV exclusion is unambiguous and applies to the underlying litigation. And, under Texas law, Megalomedia is charged with knowledge of the policies it purchased, including the unambiguous reality TV exclusion. Therefore, it knew, as a matter of law, that the policy would not cover claims like those raised in the underlying lawsuit. This conclusively negates an essential element of each of Megalomedia's claims as a matter of law. Moreover, the facts found by the district court confirm that Megalomedia knew the exclusion applied to *My 600-lb Life*. Megalomedia was specifically reminded that the exclusion was on the policy multiple times, beginning with the first renewal in 2011. Beginning no later than 2015 Megalomedia provided Philadelphia with proof of other insurance coverage for *My 600-lb Life* when asked for proof of coverage for its reality shows. This occurred again in 2016 and again in 2017—the policy year that would respond to Bonner's underlying claims. Megalomedia also provided gross production numbers for its shows, excluding *My 600-lb Life,* when Philadelphia requested the non-reality production costs.

Therefore, the district court rightfully found, as a matter of fact, that Megalomedia knew that the reality TV exclusion applied to *My 600-lb Life.*

Likewise, the Court rightfully found that Stalnaker's email was not an actionable misrepresentation under Texas law. This 2011 email does not refer to any specific type of coverage, the reality TV exclusion, or *My 600-lb Life.* In fact, it occurred nine years before the underlying claims were asserted and years before *My 600-lb Life* even existed. For these reasons, the Court should affirm the district court's judgment.

## PRAYER

WHEREFORE, Philadelphia prays that the Court affirm the district court's summary-judgment order, final judgment, and findings of fact and conclusions of law. Philadelphia prays for all other appropriate relief.

*s/Stephen A. Melendi*
_____

Stephen A. Melendi
Texas Bar No. 24041468
stephenm@tbmmlaw.com
Matthew Rigney
Texas Bar No. 24068636
mattr@tbmmlaw.com
Grant Martin
Texas Bar No. 24102145
GrantM@tbmmlaw.com
Tollefson Bradley Mitchell & Melendi, LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone: (214) 665-0100
Telecopier: (214) 665-0199

Charles T. Frazier, Jr.
Texas Bar No. 074303100
cfrazier@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
8144 Walnut Hill Lane, Suite 1000
Dallas, Texas 75231
Telephone: (214) 369-2358
Telecopier: (214) 369-2359

**ATTORNEYS FOR APPELLEE-DEFENDANT PHILADELPHIA INDEMNITY INSURANCE COMPANY**

**CERTIFICATE OF COMPLIANCE**

I certify that:

1.     This brief complies with the type-volume of FED. R. APP. P. 32(a)(7)(B) because it contains 12,969 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface and type-style requirements of FED. R. APP. P. 32(a)(5) and (a)(6) because it was prepared in Microsoft Office Word 2016 in 14-point font, Times New Roman type style, except for footnotes, which are in 12-point font as permitted by Fifth Circuit Rule 32.1.

*s/Stephen A. Melendi*
Stephen A. Melendi

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2024, I used the Court's CM/ECF system to file and serve Appellee's Amended Brief on parties through their counsel of record, listed below:

Santosh Shankaran Aravind
Anthony Frank Arguijo
Stephen E. McConnico
Jane Webre
SCOTT, DOUGLAS & MCCONNICO, L.L.P.
303 Colorado Street, Suite 2400
Austin, Texas 78701
*saravind@scottdoug.com*
*aarguijo@scottdoug.com*
*smcconnico@scottdoug.com*

**Counsel for Plaintiffs – Appellants
Megalomedia Incorporated,
Megalomedia Studios, L.L.C.,
Mansfield Films, L.L.C., and DBA
Holdings, L.L.C.**

*s/Stephen A. Melendi*
Stephen A. Melendi