Case No. 23-20570

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

MEGALOMEDIA INCORPORATED; MEGALOMEDIA STUDIOS, L.L.C.;
MANSFIELD FILMS, L.L.C.; DBA HOLDINGS, L.L.C.,
*Plaintiffs-Appellants*

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,
*Defendant-Appellee*
_____

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Civil Action No. 4:20-CV-1644
_____

REPLY BRIEF OF APPELLANTS
_____

Jane M. N. Webre
Texas Bar No. 21050060
jwebre@scottdoug.com
Santosh Aravind
Texas Bar No. 24095052
saravind@scottdoug.com
Anthony Arguijo
Texas Bar No. 24079781
aarguijo@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado St., Suite 2400
Austin, TX 78701
512-495-6300—Tel.
512-495-6399—Fax

COUNSEL FOR APPELLANTS

# TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................... iv

INTRODUCTION ...............................................................................1

ARGUMENT .....................................................................................4

    A.    The term "reality show" is ambiguous and must be construed in Megalomedia's favor to support coverage...........................................4

        1.    To conduct an "eight-corners" analysis, the term "reality show" must first be given a proper legal construction to determine whether the facts alleged in the underlying petition meet the policy's standard. ............................................4

        2.    The term "reality show" can reasonably be construed to not encompass productions documenting weight-loss journeys, such as *My 600-lb Life*. ...............................................5

        3.    When an insurance policy is ambiguous, the Court may consider extrinsic evidence to give meaning to the words the parties used. ..........................................................8

            a.    The circumstances surrounding the implementation of the reality show exclusion confirm that it does not encompass weight-based shows like *My 600-lb Life*. ...............................................................10

            b.    The parties' course of performance confirms that the reality show exclusion does not encompass weight-based shows like *My 600-lb Life*. .......................13

    B.    Megalomedia properly preserved its legal argument that the "reality show" exclusion is ambiguous. ..............................................16

        1.    Whether the reality show exclusion is ambiguous is a legal question that Megalomedia raised, Philadelphia responded to, and the district court ruled on at summary judgment. .........16

        2.    The district court, after hearing evidence during the bench trial, reaffirmed its determination that the reality show exclusion is unambiguous in its conclusions of law. ................18

ii

C.  If the policy does not provide coverage, Philadelphia committed an actionable tort by representing that the reality show exclusion would be applied differently than Philadelphia actually applied it. .................................................................................................... 19

CONCLUSION .......................................................................................................... 22

CERTIFICATE OF SERVICE ................................................................................. 23

CERTIFICATE OF COMPLIANCE ....................................................................... 23

<u>INDEX OF AUTHORITIES</u>

**Cases**

*Dupree v. Younger,*
     598 U.S. 729 (2023)..................................................................................17

*Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin,*
     955 S.W.2d 81 (Tex. 1997) ...........................................................................9

*Finger Oil & Gas, Inc. v. Mid-Continent Cas. Co.,*
     No. 22-50432, 2023 WL 581650 (5th Cir. Jan. 27, 2023) ...........................20

*Gonzalez v. Mid-Continent Cas. Co.,*
     969 F.3d 554 (5th Cir. 2020) .........................................................................7

*Huss v. King Co., Inc.,*
     338 F.3d 647 (6th Cir. 2003) .......................................................................19

*Int'l Ins. Co. v. RSR Corp.,*
     426 F.3d 281 (5th Cir. 2005) .......................................................................10

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.,*
     242 S.W.3d 1 (Tex. 2007) .............................................................................6

*Monroe v. BITCO,*
     640 S.W.3d 195 (Tex. 2022) ..........................................................................9

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.,*
     907 S.W.2d 517 (Tex. 1995) ......................................................................8, 9

*PPI Tech. Servs., L.P. v. Liberty Mut. Ins. Co.,*
     515 Fed. Appx. 310 (5th Cir. 2013) ...........................................................5, 6

*RSUI Indem. Co. v. The Lynd Cos.,*
     466 S.W.3d 113 (Tex. 2015) .......................................................................10

*Utica Lloyd's of Tex. v. Sitech Eng'g Corp.,*
     38 S.W.3d 260 (Tex. App.—Texarkana 2001, no pet.) .................................9

Case No. 23-20570

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

MEGALOMEDIA INCORPORATED; MEGALOMEDIA STUDIOS, L.L.C.;
MANSFIELD FILMS, L.L.C.; DBA HOLDINGS, L.L.C.,
*Plaintiffs-Appellants*

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,
*Defendant-Appellee*

_____

## REPLY BRIEF OF APPELLANTS
_____

TO THE HONORABLE COURT:

Plaintiff-Appellants Megalomedia Incorporated ("Megalomedia"), Megalomedia Studios, L.L.C., Mansfield Films, L.L.C., and DBA Holdings, L.L.C. file this Reply Brief.

## INTRODUCTION

Is *My 600-lb Life*—a production that "follows the lives of morbidly obese individuals and documents their attempts to reduce their weight to a healthy level"— a documentary show or a reality show? The answer is open to interpretation. And the fact that the answer is open to interpretation reveals the fundamental error giving rise to this appeal.

The district court erred in accepting Philadelphia's argument that the term "reality show" is unambiguous and can only reasonably be interpreted in one way—to encompass *My 600-lb Life*. This error underlies the district court's ruling that Philadelphia had no duty to defend or indemnify Megalomedia for claims arising from *My 600-lb Life*. And it also underlies the district court's decision that Philadelphia did not fraudulently induce Megalomedia into acquiring insurance policies from Philadelphia.

The problem with the district court's ruling is that it deals in absolutes for something on which reasonable minds could differ. The term "reality show" can reasonably be interpreted in different ways. It might be construed to include only competition shows, such as *Survivor* or *Dancing with the Stars*. It might be construed to include a series like *Keeping up with the Kardashians*, but not a more "informative" documentary-type series like *Formula 1: Drive to Survive* or *Making a Murderer*. Where *My 600-lb Life* fits on this spectrum of reality show versus documentary show is ultimately in the eye of the beholder.

The notion that *My 600-lb Life* can be interpreted as a documentary show and not a reality show is supported by record evidence. Philadelphia itself struggled internally to delineate what constituted a "reality show" when implementing the reality show exclusion, distinguishing between "documentary" shows, which would retain coverage, and "reality shows," which would not. And the underwriter who

actually implemented the reality show exclusion testified that whether something is a documentary show or a reality show is "open to interpretation." The fact that neither Philadelphia's underwriting guidelines nor the underwriter tasked with following those guidelines could provide any guidance as to what constitutes a "reality show" is confirmation that the term "reality show" is reasonably susceptible to more than one interpretation.

As such, the term must be construed in a way that favors coverage for Megalomedia in this case, even if that construction is not the most reasonable construction possible out of the available options. Contrary to Philadelphia's representations in its appellate brief, Megalomedia raised the argument that the reality show provision is ambiguous and should be construed in Megalomedia's favor to the district court on summary judgment. Philadelphia responded to that argument in its reply brief at summary judgment. Because the district court rejected Megalomedia's ambiguity argument and failed to properly construe the reality show exclusion, its ruling that Philadelphia had no duty to defend Megalomedia in this case must be reversed. Alternatively, if Philadelphia is successful in avoiding coverage under the policy, it must be held liable for leading Megalomedia to believe that its productions would retain full coverage and not be subject to the reality show exclusion when Philadelphia never intended to provide such coverage at all.

# ARGUMENT

A.   The term "reality show" is ambiguous and must be construed in Megalomedia's favor to support coverage.

   1.   To conduct an "eight-corners" analysis, the term "reality show" must first be given a proper legal construction to determine whether the facts alleged in the underlying petition meet the policy's standard.

Philadelphia spends the bulk of its brief discussing the "eight corners" rule, also known as the "complaint allegation" rule, arguing that it is improper to consider evidence extrinsic to the four corners of the underlying petition in evaluating whether Philadelphia had a duty to defend. *See* Brief at 16–17. This argument misses the point. Megalomedia has never argued that there is a need to consider evidence extrinsic to the underlying petition in an effort to test the veracity of the allegation that *My 600-lb Life* is a production that "follows the lives of morbidly obese individuals and documents their attempts to reduce their weight to a healthy level." ROA.235–36. Megalomedia's argument instead concerns whether *My 600-lb Life* can reasonably be construed as something other than a "reality show" within the meaning of the policy.

To determine whether a production is a "reality show" under the exclusion, the Court must first determine what a "reality show" is. Only after the Court has made the threshold legal determination as to the correct interpretation of the term "reality show" can it then measure the facts alleged in the petition against the policy's plain language.

2.      The term "reality show" can reasonably be construed to not encompass productions documenting weight-loss journeys, such as *My 600-lb Life*.

Philadelphia fails to join issue on this threshold question of how to properly construe the term "reality show." Philadelphia's position is essentially that *My 600-lb Life* is a reality show because it is a reality show. But this simply begs the question: What is a reality show within the meaning of the exclusion? Philadelphia cannot answer that question in its briefing, and its underwriter who implemented the reality show exclusion could not answer that question on the stand. ROA.5208–66. Philadelphia has no internal guidelines concerning how to define "reality show," which is unsurprising because, unlike common insurance terms like "bodily injury," "property damage," or the like, the term "reality show" is not a well-established term in the insurance context. It is unique to Megalomedia's policy and requires a focused construction.

The best Philadelphia has offered is that because the underlying petition characterizes *My 600-lb Life* as a "reality TV show" then it must be a reality show under the language of the exclusion. *See* Brief at 25 ("Because the pleading and the exclusion employ the exact same phrase, there can only be one clear, definitive legal meaning."). But a mere label used in the underlying petition does not control the correct legal interpretation of the policy. *See, e.g.*, *PPI Tech. Servs., L.P. v. Liberty Mut. Ins. Co.*, 515 Fed. Appx. 310, 314 (5th Cir. 2013) (holding that even though the "underlying complaints included the term 'property damage'" there was no still

no duty to defend because "the underlying complaints contain[ed] no factual allegations of actual damage to or loss of tangible property"); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 15 (Tex. 2007) ("The duty to defend must be determined under the eight-corners rule *rather than by the labels attached to the underlying claims*." (emphasis added)).

For example, if the policy here defined "reality show" to include only "competition" shows, then there would be no question that the reality show exclusion would not encompass *My 600-lb Life*, regardless of whether the petition used the words "reality TV show." The allegations concerning the nature of the show and describing it as a show that "follows the lives of morbidly obese individuals and documents their attempts to reduce their weight to a healthy level" would confirm that it did not meet the policy's definition. ROA.235–36; *see, e.g.*, *PPI Tech. Servs., L.P.*, 515 Fed. Appx. at 314 (concluding that the mere use of the label "property damage" in a petition was not sufficient to trigger the policy's coverage for "property damage" because the description of the damage in the factual allegations did not in fact satisfy that term).

It is not enough for Philadelphia to declare that *My 600-lb Life must* be a reality show simply because the petition calls it a "reality TV show"—the term "reality show" must still be interpreted. And where, as here, the interpretation is of an exclusionary clause, the Court must adopt the construction "urged by the insured"

"as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Gonzalez v. Mid-Continent Cas. Co.*, 969 F.3d 554, 561 (5th Cir. 2020).

The district court erred in this threshold legal determination when it construed the reality show exclusion as unambiguous and then determined that the facts alleged fit within the exclusion. Had the district court construed the reality show provision correctly, it would have determined that the term "reality show" is ambiguous because it is reasonably susceptible to more than one meaning. One such interpretation is that "reality show" includes only those productions involving an increased element of danger and over which Megalomedia lacked control, which is a distinction that Philadelphia's representative drew early in the parties' relationship when evaluating productions. ROA.4799–4800; ROA.6130; ROA.6144. *My 600-lb Life* would not fit within this definition of "reality show." Another such interpretation is that *My 600-lb Life* is a covered "documentary show" and not an excluded "reality show"—again, another distinction that Philadelphia's representatives drew. ROA.6182; *see also* ROA.5221 ("**Q.** You're making a distinction between a reality show, which is bad from Philadelphia's perspective, right? **A.** It's not in our appetite. **Q.** It's not in your appetite, okay. It's not in your appetite; and a documentary is in your appetite, correct? **A.** Correct.").

There are thus multiple constructions of the term "reality show" that are favorable to Megalomedia and that would impose a duty to defend on Philadelphia. The district court was required to adopt one of these constructions but failed to do so.

3.    <u>When an insurance policy is ambiguous, the Court may consider extrinsic evidence to give meaning to the words the parties used.</u>

The Court can make the legal determination that the term "reality show" is ambiguous and construe it in Megalomedia's favor based on the plain, ordinary meaning of the term without considering any evidence. But because the term is ambiguous, the Court is also permitted to consider extrinsic evidence to give meaning to the words the parties used. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995) ("Extrinsic evidence may, indeed, be admissible to give the words of a contract a meaning consistent with that to which they are reasonably susceptible, i.e., to 'interpret' contractual terms."). Philadelphia disagrees, arguing that in any case assessing an insurer's duty to defend, a court can look *only* at the words on two documents in making its determination: (1) the underlying petition containing the claims and allegations for which defense is sought, and (2) the insurance policy. Philadelphia's argument that a court can *never* look beyond these two documents is incorrect. (*See* Brief at 35.)

Texas law is clear that when either, or both, of the two operative documents are incomplete or ambiguous as to the question of coverage for a duty to defend,

additional evidence can be considered. As an example, if gaps in the underlying petition are such that the application of the eight-corners rule "is not determinative of whether coverage exists," then a court can consider evidence extrinsic to the "four corners" of the petition to fill that gap. *See Monroe v. BITCO*, 640 S.W.3d 195, 201–02 (Tex. 2022) (describing the eight-corners rule as "the initial inquiry to be used to determine whether a duty to defend exists" but authorizing courts to consider extrinsic evidence, in addition to the policy and the underlying petition, if "the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists").

The same is true when the eight-corners rule cannot determine the coverage question due to an ambiguity in the policy terms. *See, e.g.*, *Utica Lloyd's of Tex. v. Sitech Eng'g Corp.*, 38 S.W.3d 260, 263 (Tex. App.—Texarkana 2001, no pet.) ("*Where the terms of the policy are ambiguous*, or where the petition in the underlying suit does not contain factual allegations sufficient to enable the court to determine whether the claims are within the policy coverage, *the court may consider extrinsic evidence to assist it in making the determination*." (emphasis added)).

Like with any contract, when an insurance policy is ambiguous, evidence extrinsic to the four corners of the policy can be considered to determine the parties' intent. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 907 S.W.2d at 521; *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex. 1997) ("Griffin's petition

does not allege that his injuries resulted from an auto accident. . . . The term 'auto accident' is not ambiguous *so that a court must look to the parties' intent or a construction in favor of coverage*." (emphasis added)).

Thus, gaps in the underlying petition permit consideration of evidence extrinsic to the underlying petition to fill those gaps, and ambiguities in the policy permit consideration of evidence extrinsic to the policy to give meaning to the words the parties used. As it relates to an ambiguity in the policy, the additional evidence can include evidence of the "circumstances present when the contract was entered," *id.*, evidence of the term's commonly accepted meaning within the relevant industry, *RSUI Indem. Co. v. The Lynd Cos.*, 466 S.W.3d 113, 121 n.1 (Tex. 2015), and "evidence of the course of dealing and performance of the contract," *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 295 (5th Cir. 2005). All of this evidence supports an interpretation favorable to Megalomedia.

      a.   <u>The circumstances surrounding the implementation of the reality show exclusion confirm that it does not encompass weight-based shows like *My 600-lb Life*.</u>

The reality show exclusion did not exist in the initial policy. Instead, Megalomedia first applied for coverage by listing out certain productions for which it sought coverage. ROA.6026–27. Philadelphia did not decline coverage on the grounds that the productions were "reality shows." ROA.5096, 6054. Instead, it determined that the productions were within its "appetite" for coverage, approved

the application, and wrote an insurance policy that did not contain any exclusion for "reality shows." ROA.5096, 6054; *see also* ROA.5221 ("**Q.** You're making a distinction between a reality show, which is bad from Philadelphia's perspective, right? **A.** It's not in our appetite. **Q.** It's not in your appetite, okay. It's not in your appetite; and a documentary is in your appetite, correct? **A.** Correct.").

The impetus for the reality show exclusion came when Philadelphia declined Megalomedia's application for coverage for *Cartel City*. ROA.5229–31. Philadelphia seeks to isolate this decision as relating only to the denial for a new policy for *Cartel City*, but Philadelphia's rationale for denying coverage for *Cartel City* is what prompted Philadelphia to implement the reality show exclusion. Specifically, Philadelphia declined coverage for *Cartel City* because it sounded "more like a reality show than a documentary." ROA.6133. Philadelphia thus determined that "reality shows" were not within its appetite for coverage, prompting Philadelphia to add the exclusion for "any/all reality shows." ROA.6130; *see also* ROA.5227 ("**Q.** So, if a show is classified as a documentary, it falls within the underwriting guidelines, correct? **A.** Into our appetite, yes. . . . **Q.** Into your appetite. Okay. So when you say into your appetite, is that another way of saying falls within the underwriting guidelines? **A.** Yes. **Q.** Okay. And if a show is classified as reality TV, it's unacceptable, right? **A.** Correct.").

But what of the existing productions that Philadelphia had already approved for full coverage? There were two options—either those shows no longer had full general liability coverage because they were subject to the new reality show exclusion, or they retained their full general liability coverage because the new reality show exclusion did not apply to them. Philadelphia made clear it was the latter. When Megalomedia protested the denial of *Cartel City* and Philadelphia's description of it as a "reality show," Philadelphia, through its marketing representative, Don Stalnaker, articulated "a better explanation" of what made *Cartel City* a problematic "reality show" while reiterating that Philadelphia was "okay with" Megalomedia's other productions that had already been approved:



From: **"Stalnaker, Don"**     **CONFIDENTIAL**
To: **"Eileen Wallace" <eileen@mckinleyrother.com>**
     **"Relf, Melissa"**
CC: **"Jason McKinley" <jason@mckinleyrother.com>**
Date: 6/6/2011 9:45:44 AM
Subject: RE: Megalomedia PHPK658366 New Production Cartel City

Eileen: Thank you for your patience on this one. I went back to Underwriting to get a better explanation on why we won't consider this one:
1. Whey following Law Enforcement around, the Film Maker does not have the same protections against Trespassing and other potential offenses
2. There is also the exposure to the destruction of Property in the process of filming
3. there is an exposure to the damage to their own equipment

We are okay with the other work that they are doing, just not this particular project.
Please let us know if we can do anything else to help you.
Thanks,
Don

ROA.6144.

Among those productions that had already been approved for coverage was *Heavy*, a production documenting the weight-loss journey of certain individuals.

ROA.5096, 6026–27, 6054. The circumstances surrounding the implementation of the reality show exclusion thus confirm that the term "reality show" was not meant to encompass a weight-loss show such as *Heavy*, or later, *My 600-lb Life*, otherwise Philadelphia would have said so in real time upon implementing the reality show exclusion.

      b.    <u>The parties' course of performance confirms that the reality show exclusion does not encompass weight-based shows like *My 600-lb Life*.</u>

Philadelphia continued to support this interpretation with its 2011 proposal for insurance, which it provided the year after implementing the reality show exclusion. The 2011 proposal stated that it was not the policy's intent to cover the film and production of "TV Series" or the film and production of "Reality Shows." ROA.6188. Megalomedia specifically asked about this language because Megalomedia did "produce documentary type shows" and was thus "concerned" about the scope of coverage. ROA.6182.

Philadelphia's representatives wrestled with the same concern. Specifically, Melissa Relf, a Philadelphia Senior Account Executive, understood that Philadelphia knew about and had agreed to provide coverage for certain "documentary type shows" but also knew that Philadelphia did not want to cover "actual reality shows." ROA.6182. Relf sought guidance on what the difference between the two would be. *Id.* Tellingly, Relf also characterized the show *Quints by Surprise* as a "documentary

show," not a "reality show." *Id.* This is significant because Philadelphia's position now is that all of Megalomedia's productions—*My 600-lb Life*, *Quints by Surprise*, etc.—are excluded "reality shows" and cannot reasonably be interpreted otherwise. But in real time when the reality show exclusion first appeared, Philadelphia internally distinguished between the different productions, viewing some as "reality shows" and others as "documentary type shows." ROA.6182; *see also* ROA.6344.

The internal struggle did not end there. Even at trial, Jennifer Costantini, the underwriter whom Relf approached for clarification back in 2011, could not define or identify what made something a "reality show" instead of a "documentary show." ROA.5254–60. Instead, Costantini acknowledged that there was "clarification needed" as it related to the exclusionary language in the 2011 proposal and Megalomedia's productions. ROA.5239. Costantini further acknowledged "that different underwriters might have a different perspective" about how to characterize certain productions and recognized that while she never "made the determination" that *My 600-lb Life* was a "reality show" within the meaning of the reality show exclusion, which she implemented, a different underwriter in the future did. ROA.5254–56.

Finally, Costantini could not identify which of a series of shows would be considered an excluded "reality show" or an accepted "documentary type show," nor could she articulate the difference between the two categories. ROA.5254–60.

Costantini could not answer whether *Heavy*—the weight loss show that had been approved for coverage on the initial policy—was a "reality TV show," responding, "I don't know," when asked. ROA.5258. Costantini could not answer whether *My 600-lb Life* is a "reality TV show," responding, "I don't know," when asked. ROA.5259. Indeed, Costantini could not answer whether *any* of Megalomedia's productions were "reality TV shows":

```
19 Q    Is the same answer for every single one of these questions,
20 Quints by Surprise; Shipping Wars; My 600-Lb Life, Where Are
21 They Now?; Texas Car Wars; Half Ton Teen; and Half Ton Mom, the
22 same answers that you've been giving, which are you don't know
23 if it's a reality TV show -- excuse me -- correct?
24 A    Correct.
```

ROA.5259.

This testimony and Philadelphia's internal discussions confirm that reasonable minds can differ on whether a production is a "reality show." As a result, the district court was required to adopt any reasonable interpretation that favored Megalomedia and provided for coverage in this case—such as *My 600-lb Life* being a "documentary type show" instead of a "reality show." ROA.5227 ("**Q.** So, if a show is classified as a documentary, it falls within the underwriting guidelines, correct? **A.** Into our appetite, yes. . . . **Q.** Into your appetite. Okay. So when you say into your appetite, is that another way of saying falls within the underwriting guidelines? **A.** Yes. **Q.** Okay.). Because the district court failed to do so, this Court

should reverse the district court's summary judgment ruling that the reality show exclusion shields Philadelphia from a duty to defend Megalomedia.

B.   Megalomedia properly preserved its legal argument that the "reality show" exclusion is ambiguous.

Philadelphia attempts to avoid the ambiguity argument on procedural grounds. Specifically, Philadelphia argues that Megalomedia waived any argument on ambiguity because it never raised it in the district court. This is incorrect.

1.   Whether the reality show exclusion is ambiguous is a legal question that Megalomedia raised, Philadelphia responded to, and the district court ruled on at summary judgment.

The question of whether a policy is ambiguous is a legal question for the court. Megalomedia raised this exact legal question in its response to Philadelphia's motion for summary judgment, arguing that "the Exclusion is ambiguous." ROA.1378. Megalomedia then identified the then-existing evidence[1] of the circumstances surrounding the execution of the relevant policy to explain how those surrounding circumstances supported Megalomedia's argument that the reality show exclusion was subject to more than one reasonable interpretation. ROA.1378–81.

---

[1] Philadelphia moved for summary judgment well before any discovery had even been conducted in the case. Megalomedia raised this point to the district court in arguing that Philadelphia's motion was premature in that Megalomedia had not yet received any discovery concerning the reality show exclusion, but the district court proceeded with ruling on summary judgment. ROA.1380 & n.5.

Philadelphia did not argue that Megalomedia had waived its argument that the reality show exclusion was ambiguous. Instead, Philadelphia spent four pages in its reply responding specifically to Megalomedia's ambiguity argument. ROA.1708–11. The district court ultimately agreed with Philadelphia and specifically ruled on the ambiguity question: "Here, the Court finds that the Policies are unambiguous and, consequently, will not consider extrinsic evidence." ROA.1761.

Megalomedia thus raised the legal argument of ambiguity at summary judgment, Philadelphia joined issue and responded to the argument in its reply brief, and then the district court made a specific ruling on the question by determining that the provision is unambiguous. Nothing more is required by Megalomedia to preserve error on this legal issue. *Cf. Dupree v. Younger*, 598 U.S. 729, 736 (2023) ("We therefore hold that a post-trial motion under Rule 50 is not required to preserve for appellate review a purely legal issue resolved at summary judgment."). Philadelphia's repeated assertions that Megalomedia "never asserted in the district court that the term 'reality show' is ambiguous" and that Megalomedia is raising an ambiguity argument "for the first time on appeal," (Brief at 17, 23, 31–33), are demonstrably false. ROA.1378–81, ROA.1708–11.

2. <u>The district court, after hearing evidence during the bench trial, reaffirmed its determination that the reality show exclusion is unambiguous in its conclusions of law.</u>

Philadelphia also argues that this Court must put mental blinders on and ignore record evidence from the bench trial in evaluating the ambiguity question. This is not true, and it is not what the district court did. Instead, after hearing all of the evidence, the district court reiterated its position that the reality show exclusion was unambiguous in its findings of fact and conclusions of law after the bench trial took place: "The reality TV exclusion is unambiguous; it has only one reasonable meaning." ROA.4534. The district court did not review only the summary judgment record in entering its findings of fact and conclusions of law. It based its decision on the entire record. *See, e.g.*, ROA.4519 ("After considering the pleadings, the evidence, the arguments, and authorities presented by counsel and the parties, the Court makes its findings of fact and conclusions of law as attached hereto."). Indeed, the district court even cited to its findings of fact and conclusions of law in the final judgment when referencing the reasons behind its ruling that Philadelphia has no duty to defend or indemnify Megalomedia. *See* ROA.4546 (citing Doc. # 125).

Megalomedia is thus not relying on "new" evidence that the district court has never seen or considered—this is an appeal of a *bench trial* in which the district court heard *all* of the evidence in making its rulings. There is no question that the district court could have changed its ruling from summary judgment after

completing the bench trial and hearing all of the evidence. *See, e.g.*, *Huss v. King Co., Inc.*, 338 F.3d 647, 651 (6th Cir. 2003). The district court instead reaffirmed its conclusion based on such evidence—evidence that went directly to the question of intent and the parties' understanding of the reality show exclusion. This Court can properly consider such evidence on appeal as it is the same evidence that was before the district court in reaching its conclusions.

C.  <u>If the policy does not provide coverage, Philadelphia committed an actionable tort by representing that the reality show exclusion would be applied differently than Philadelphia actually applied it.</u>

The above discussion demonstrates that the district court erred in determining that Philadelphia has no duty to defend or indemnify Megalomedia. The same evidence also supports Megalomedia's tort claims, which are actionable in the event it is determined that the policy does not provide the coverage in question.

The evidence on the circumstances surrounding the implementation of the reality show exclusion and the parties' course of performance establishes that Philadelphia (1) denied coverage for *Cartel City* because it sounded "more like a reality show than a documentary," (2) implemented the reality show exclusion in connection with its denial of coverage for *Cartel City*, and (3) provided reassurances that unlike with the *Cartel City* production, which sounded "more like a reality show than a documentary," it was "okay with" Megalomedia's other productions, including *Heavy*. ROA.5096, 6026–27, 6144, 6054. Philadelphia thus confirmed that

some of Megalomedia's productions would not be considered "reality shows" within the meaning of the new reality show exclusion, and Megalomedia justifiably relied on those representations.

Philadelphia, however, has now changed its position. According to Philadelphia's new position, there is only one reasonable interpretation of "reality show" and that interpretation encompasses *Heavy*, *My 600-lb Life*, and every other of Megalomedia's productions. But if that were true, then Philadelphia would not have represented that it was "okay with" Megalomedia's other productions. Philadelphia either meant what it said, or Philadelphia misrepresented how it was going to apply the reality show exclusion when it said that it was "okay with" Megalomedia's other productions. If it is the latter and the reality show exclusion is applied to *My 600-lb Life*, then Philadelphia is liable for misrepresenting the application of a specific policy term—the reality show exclusion.

Because Philadelphia's misrepresentation related to a specific policy term, this Court's unpublished opinion in *Finger Oil & Gas, Inc. v. Mid-Continent Cas. Co.*, No. 22-50432, 2023 WL 581650, at *3 (5th Cir. Jan. 27, 2023) does not protect Philadelphia from liability. Stalnaker's 2011 misrepresentation that Philadelphia was "okay with" Megalomedia's other productions was "more than [a] 'vague representation[]'" because it addressed Philadelphia's view of the reality show

exclusion and explained whether specific Megalomedia productions would be "okay" under that exclusion.

The same focus on the specific reality show exclusion continued with the 2011 proposal for insurance provided by Philadelphia. Philadelphia cites the 2011 proposal as an example of its informing Megalomedia that "reality shows" would not be covered. But Philadelphia ignores the fact that Megalomedia specifically questioned that language and that Philadelphia's own Senior Account Representative viewed a number of Megalomedia's productions as "documentary shows" and not "actual reality shows":



From: "Relf, Melissa"
To: "Costantini, Jennifer"
**CONFIDENTIAL**
Date: 12/6/2011 1:45:27 PM
Subject: FW: Megalomedia's Upcoming Projects Report; Path 5531721
Attachments: Megalomedia's Upcoming Projects.docx
package.PDF

Hi Jennifer,

The insured called me asking about the verbage on the renewal quote "Please note it is not this policy's intent to cover film and production of TV series and film and production of reality shows". They are concerned b/c they do produce documentary type shows which we knew about when we first wrote this policy last year. I realize we do not want to write actual reality shows. Also the Quints by Surprise documentary show is giong into it's fourth season which I would consider a "series". Can you provide some clarification in regards to your comment on the quote?

Also, attached is a list of upcoming projects. I have emailed the agent to provide descriptions on the new shows to make sure they fit into what we consider exceptable. I will forward this info to you upon receipt.

Thanks,

**Melissa Relf, CISR**
Senior Account Executive I
Philadelphia Insurance Companies
A member of the Tokio Marine Group

ROA.6182. Thus, in response to a specific question concerning specific language in a specific exclusion, Philadelphia assured Megalomedia, through its broker, that

Megalomedia's productions, i.e., documentary shows, would be covered. ROA.4912–13. Megalomedia relied on these assurances in continuing to purchase insurance from Philadelphia. ROA.4968; ROA.4983–84. Given the inconsistency and lack of clarity in Philadelphia's position on the term "reality show," Megalomedia was justified in relying on Philadelphia's representations from the time the reality show exclusion was implemented and discussed. The district court clearly erred in holding that Megalomedia's reliance on Philadelphia's representations was not justified.

If Philadelphia does not in fact have the coverage assured by Philadelphia, then Philadelphia's assurances were false, and Philadelphia is liable for fraudulent inducement and DTPA and Insurance Code violations.

CONCLUSION

For the above reasons, Megalomedia respectfully requests that the Court reverse the district court's judgment.

Respectfully submitted,

SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300
(512) 495-6399 (Fax)

By:  /s/ *Jane Webre*
     Jane M. N. Webre
     Texas Bar No. 21050060
     jwebre@scottdoug.com

Santosh Aravind
Texas Bar No. 24095052
saravind@scottdoug.com
Anthony Arguijo
Texas Bar No. 24079781
aarguijo@scottdoug.com

COUNSEL FOR APPELLANTS

CERTIFICATE OF SERVICE

I certify that on June 10, 2024, I electronically filed the foregoing Brief of Appellant, and it has been served on all registered counsel of record via the CM/ECF system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure.

*/s/ Jane Webre*
Jane Webre

CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitations, Typeface Requirements, and Type-Style Requirements

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because this brief contains 4,686 words. I understand that a material misrepresentation in this certificate of compliance may result in striking the brief and in sanctions against the person signing the brief.

*/s/ Jane Webre*
Jane Webre

June 10, 2024.